Crane *v.* Hardy.

## CRANE v. HARDY.

Whether in ejectment for land purchased at sheriff's sale by one not a party to the execution, it is necessary to prove the judgment on which the execution was issued. Query.

The journal of the court, in which its judgments and all its proceedings are entered from day to day, and signed by the court, is sufficient evidence of a judgment.

A warrant of attorney and plea of a defendant taken from the files in the case, is evidence, in the same court, of the appearance of the defendant in the suit.

By appearing and going to trial in an attachment suit, defendant waives all prior irregularities.

An order made by the court, under R. S. 1838, for the sale of real estate taken in an attachment suit, goes to the sheriff in office for the time being, and not to his predecessor who served the writ of attachment.

Crane *v.* Hardy.

The court will presume the law of a sister state is the same as that of their own state, unless the contrary is shown.

A judgment is not a contract within the inhibition of the constitution of laws impairing the obligation of contracts.

To pass the title to real estate sold on execution under the act of 1841, it is not necessary it should appear, from the officer's return to the execution, that either of the appraisers was chosen by defendant, or that he had an opportunity to choose one.

The settled doctrine as to sales under decrees and judgments is, that the purchaser is not concerned with anything except the judgment, levy and sale. All other questions are between the parties to the judgment and the officer making the sale.

CASE reserved from Livingston Circuit Court. Ejectment for land purchased by plaintiff on the 13th July, 1841, at sheriff's sale, upon an order granted by the circuit court of that county, in a suit in attachment, in which Oliver P. Thayer was plaintiff and Hardy was defendant. On the trial, plaintiff did not produce any formal record of the judgment in the attachment suit, but to prove the judgment, offered the journal record of the court, in which its proceedings are entered from day to day in evidence, which was objected to by defendant. To show defendant appeared in and defended the attachment suit, plaintiff offered in evidence, from the files of the case, the warrant of attorney and plea of the defendant, which were also objected to by defendant. Plaintiff also offered in evidence the order of sale in the attachment suit, with the sheriff's return, which defendant objected to on the ground, 1st, That the sale and return were not made by the officer who served the writ of attachment, but by his successor in office ; 2d, That the land should not have been appraised under the act of 1841, but should have been sold at public vendue to the highest bidder, according to the laws of the state on the 6th January, 1837, the date of the note on which the judgment was rendered in the attachment suit; 3d, The sale was not in conformity with the laws of the state in force at the time of the rendition of the judgment, which was in November, 1840; 4th, It is not stated in the return the land was sold for the highest bid, or to the highest bidder. The sheriff's deed to plaintiff, of the land in question, was next offered in evidence by plaintiff, and objected to by defendant. The objections were severally overruled by

the court, and the evidence allowed to go to the jury, and exceptions were taken by defendant in each case.  The attachment suit was on a promissory note made in the state of New York, payable generally, and at no particular place.  Defendant also requested the court to charge the jury, that the plaintiff must show the regularity of all the proceedings in the attachment suit, from the commencement thereof to the rendition of the verdict.  Also, that the sale was insufficient, under the act of 1841, because it did not appear the appraisers were chosen in accordance with that statute; that is, it did not appear the defendant, or any one chosen on his behalf, appeared or was requested to appear and select an appraiser.  The court refused to give the instructions, and defendant excepted.  The jury returned a verdict for the plaintiff, and a case presenting the above questions was made and reserved for the opinion of this court.

*Kingsley & Morgan*, for plaintiff.

*Hawkins*, for defendant.

*By the court*, WING, J.  It is difficult to determine whether it was incumbent upon the plaintiff in this suit to show, in addition to the order of sale and his deed, that there was a judgment upon which the order was founded.  It is true, as a general proposition, that in cases where the proceedings are not according to the course of the common law, the party seeking any benefit from them is bound to show their conformity to the statute under which they are had.

Assuming, for the present, that the proceedings in the case of Thayer *v.* Hardy were, so far as the rights of the defendant in this suit are in question, according to the course of the common law, the authorities do not agree as to the necessity of showing a judgment.

Mr. Greenleaf, in his second volume upon evidence, sec. 316, states the rule to be, that " where a plaintiff claims as a *purchaser under a sheriff's sale*, made by virtue of an execution *against the defendant in ejectment*, it is sufficient to show the execution and the proceedings under it, without producing a copy of the record of the judgment itself; for the debtor might have applied to have the execution set aside if it had been issued without a valid judgment to support it; but not having done so, it will be presumed, in an action against him, that the

Crane *v.* Hardy.

judgment is right." He cites 6 M. & S. 110; 5 Esp. Rep. 22, 23; and 3 Wash. R. 546; but he says this point was otherwise decided, and the judgment was required to be proved in an ejectment against the debtor himself, in Doe *v.* Smith, 1 Holt's Cases 599, n.; 2 Starkie's Rep. 199, n.; and 1 H. & Gill 172.

Judge Cowen, in his notes to Philip's Evidence, pp. 1080, 1081, cites many American authorities and some English authorities to show that plaintiff is bound to produce a judgment, on the ground that otherwise the defendant's property might be divested when in fact there was no judgment, or only one utterly void; and therefore he must show such a judgment as at the least would be valid until reversed, though he cannot be affected by any mere irregularity either in the judgment or execution, not rendering them entire nullities.

Without attempting to determine which is the true rule and which best accords with the analogies of the law, if we concede for the purposes of this case that it was necessary for the plaintiff to show a judgment, was the proof of the judgment offered by the plaintiff admissible?

It is a general rule, that if a plaintiff brings suit upon a judgment, he must produce in evidence a judgment record, not only to support the allegations in his declaration, but because his action is founded directly upon the record of a judgment which he avers to be still in full force and unsatisfied.

In England and in New York the judgment record or roll is made up by the attorney of the party recovering judgment. The short minutes of the proceedings in the cause, kept by the clerk, do not set forth at large the orders and judgments of the court, and they are not signed by the judge. They are only intended and are used as a guide in making up the judgment roll, which is not a transcript of the minutes and the pleadings. This roll, when made up by the attorney with the form of a judgment, is signed by the judge and filed with the clerk. When this is done, and not until then, is there any judgment rendered upon the verdict of the jury, upon which an execution can issue.

In this state, all the orders made and judgments rendered in a cause by the court are entered at large upon the journal. By R. S. 1838, page 382, sec. 7, this is required to be done each day, and this journal is required to be signed each day by the court. The judgment record

is a mere transcript of the "writ, pleadings, proceedings and judgment." R. S. 1838, p. 410, sec. 10. Within twenty-four hours after judgment is entered, or immediately thereafter by order of the court, execution may be issued and levied upon property, and the property be sold without any other record of the proceedings or judgment. R. S. 1838, p. 451, sec. 5.

If, then, the judgment so recorded and signed in the journal of the court is sufficient to warrant the issuing of an execution and a levy and sale of property, I cannot perceive why it is necessary for the purchaser to show a more formal judgment to sustain his purchase than would be necessary to authorize the sale; for the validity of the sale does not depend upon records afterwards made up, but upon a then existing authority derived from a judgment and execution. The judgment comes in question collaterally—the suit is not brought upon it; it is a judgment entered in the same court. The journal entry or judgment, together with all other interlocutory judgments or orders, with the pleadings in the cause, are before the court and may be inspected by them.

The defendant insists, that as the plaintiff claims through a proceeding not according to the course of the common law, he is bound to show that the whole of the proceedings were in conformity to the statute. It was admitted that the suit in attachment was brought upon a note of hand for some $250. To show that the defendant appeared in that suit, plead and went to trial, the plaintiff produced from the files of the case in the same court his warrant of attorney and plea. I cannot see how it should have been necessary for the plaintiff to produce a judgment record to enable him to do this. He had already produced the record of the judgment in the journal, and his only object further was to show that the defendant appeared in that cause, and this was shown by the original warrant of attorney and plea, and I think they were admissible for that purpose. 5 Yerg. R. 63; 14 Serg. and Raw. 153; Cow. and Hill's Notes 1075. This being shown, it appeared affirmatively that the parties and the subject matter of the suit were within the jurisdiction of the court, and in reference to any further obligation on the part of the plaintiff to produce proof, the case stood upon the same footing with any common law suit where the defendant appears and goes to trial. It does not appear defendant released the attachment by giving security under the act of 1839.

By appearing and going to trial, the defendant waived all irregularities which may have existed or accrued in the cause, and if not, the proceedings are valid until set aside. They cannot be collaterally impeached: they conclude all persons unless annulled. 3 Cow. and Hill's Notes, 803. If, in point of fact, the court had not jurisdiction, the defendant might have shown it, and it would have rendered the judgment *void for every purpose.* 19 John. R. 33; 9 Cowen 230. But the defendant does not point to any defect of jurisdiction; he insists that the plaintiff must show affirmatively that the court had jurisdiction.

The next objection was, that the sheriff who attached the lands did not sell them, but that the sale was made by his successor in office. The act, Laws 1833 p. 389, sec. 4, provides that "all the property attached shall remain in the hands of the officer, unless the garnishee in whose possession it may be found shall give bond to the officer." By section 11 of the same act it is provided, that after judgment for the plaintiff in attachment, all the property remaining in the hands of the officer, *with the lands and tenements,* shall be sold under the same restrictions and regulations as if the same had been levied upon by execution. The attachment suit was commenced under the act of 1833, in July, 1838. The Revised Statutes took effect before the return day of the writ, but there is no difference between the attachment law of 1833 and that of 1838 in respect to the duties and obligations imposed upon the sheriff, except that the laws of 1838 require the sheriff to leave a copy of his writ in the register's office for record. The laws of 1833 do not direct what sheriffs shall do with writs in their hands when they go out of office. By the Revised Statutes of 1838, p. 46, sec. 48, the outgoing sheriff is bound to serve, execute and return any writ or precept in his hands the same as if he continued in office. Under the attachment law, the writ does not remain in his hands: it is returned at the next term after it is issued, and after it is returned the clerk makes out an advertisement. If any of the personal property is sold before final judgment, a special order is made for that purpose, and the sale is made by virtue of the order. Neither the laws of 1833 or 1838 require the sheriff to take the actual custody of lands attached. He is required by both laws to retain the goods attached, and after judgment for plaintiff, "all the property remaining in the hands of the officer, *with the lands*

and tenements," are to be sold. I cannot find anything in the laws relating to writs in the hands of the sheriff when he goes out of office, which would require that the final order of sale in cases where lands only were attached should be directed to or executed by the sheriff who served the writ of attachment, if he is out of office.

The case of the American Exchange Bank v. the Morris Canal Banking Company, 6 Hill's R. 368, is cited by defendant's counsel in support of his objection. In that case the suit was against a foreign corporation, under a special statute requiring the sheriff to *attach and safely keep* all the *estate real and personal* of such corporation, to answer any judgment recovered. There are many provisions in that statute indicating that the same sheriff should finally sell. By the laws of New York, the former sheriff is required to deliver to his successor in office all executions, *attachments*, and final process, except such as the former sheriff shall have executed or shall have begun to execute by the collection of money thereon, or by a levy on property in pursuance thereof. He is authorized to proceed and complete the execution of all final process and *attachments* which he shall have begun to execute by a collection of the money thereon. It is manifest the laws of New York and of this state are very different, so much so that the case cited, founded upon a special statute, cannot be an authority in this case. The practical construction of our laws has been for very many years to direct the order of sale of real estate to the sheriff in office for the time being. The order is general, not directed to any particular officer.

It is further objected, that the proceedings and sale by the sheriff were not according to the laws of New York, where the note was made on which the attachment suit was commenced, nor pursuant to the laws of this state at the date of the note in 1837, or at the time the judgment was rendered.

It was said in the case of McCracken v. Hayward, 2 Howard's R. 612, that "the obligation of a contract consisted in its binding force on the party who makes it. This depends upon the laws in existence when it is made. They are necessarily referred to in all contracts, and form a part of them as the measure of obligation to perform them by the one party and the right acquired by the other." The doctrine asserted in that case and in the case of Bronson v. Kinzie, 1 Howard's R. 311, applies to laws in reference to which the contract is made, and.

Crane *v.* Hardy.

forming a part of the contract. In this case the note was made in the state of New York in 1837. No place of payment was specified in the note. What laws, then, were incorporated into and formed a part of the contract? It cannot be assumed that it was made in reference to the laws of this state. If not, how can it be said that the laws of this state in force in 1837 must govern and furnish the remedy upon the contract? If the laws of New York were to govern, what were they? They were not produced in evidence on the trial, and therefore the court could not notice them, if obliged to do so under any circumstances, any further than as a means of understanding the obligation of the contract, and not the remedy merely. The court would presume that the laws of New York were the same as ours, at the least until the contrary was shown. The court and the sheriff could only notice the laws of this state at the time they were required to give judgment and sell the property. It is not pretended there was any difference between the laws of that and of this state in regard to the effect to be given to the terms of the contract. The difference was claimed to be in the remedy afforded by our laws.

But it is said the judgment is a new contract, and the subsequent proceedings are to be governed by the laws in force when the judgment was rendered. If the legal effect of the judgment was to connect with it the then existing legal provisions for its enforcement in this state, then the position of the defendant would be sound. But the judgment was not a contract within the meaning of the rule quoted above, for the rule has relation to the voluntary contracts of the parties, and not to obligations forced upon either party. The law in force at the time of a sale of land upon execution must control the manner of proceeding by the officer in conducting the sale, and not the law in force at the time of the rendition of the judgment, except in those cases specially provided for by the statute, (Allen *v.* Parish, 3 Ohio R. 189) unless they interfere with the contract, as in the case of Mc Cracken *v.* Hayward.

It is further objected, that the appraisers were not chosen pursuant to the law of 1841, under which the sale purports to have been made, and that it does not appear by the return that the lands were sold to the highest bidder.

The first section of the *appraisal* law, so called, passed the 27th

March, 1841, provides that no sheriff, officer, or other person shall make sale of any lands, tenements, or real or personal estate upon any execution, attachment or other process, until the same be appraised by disinterested freeholders, as provided in said act. The third section requires the sheriff, at the time of levy of execution, or at the time of making sale, to cause the lands to be appraised by disinterested freeholders; *provided*, however, that the creditor, his agent or attorney, and the debtor, his agent or attorney, if they shall so elect, may choose each party one appraiser, and if said appraisers shall not agree in their appraisal, they may select a third person to act with them; but if they shall fail to select, then it shall be the duty of the sheriff to select and appoint said third person. There is another proviso which prohibits a sale of the premises at less than two thirds of the appraised value. The officer is directed, within ten days after such appraisal, to file in the clerk's office from which the process issued, a statement of the appraisal, signed by the appraisers agreeing thereto, and the person making the sale is directed forthwith to execute a deed of the real estate sold, to the purchaser, which may be recorded, "*and shall be prima facie evidence of the correctness of the proceedings in such sale, and, until the contrary is proved, shall vest in the purchaser the estate the defendant had in the premises.*"

By the amendatory act of the 13th April, 1841, some few alterations were made in this law, by one of which, the deed given by the sheriff was not to be operative until after six months. The other amendments do not affect the question we are now considering.

The purchaser, the plaintiff in this suit, received from the sheriff a deed. We have already said that the sheriff was authorized to act, to make the sale and give the deed. Unless his acts were void for want of conformity to the statute, the deed was valid.

The several acts passed in 1841 do not direct what shall be embraced in the sheriff's return, if the property is sold within the life of the execution, further than that he shall return a statement of the appraisal, and file it in the office of the clerk.

The sheriff returned that he had caused the land to be appraised according to law. There is nothing in the return indicating that the sheriff chose the appraisers, but the objection is, that it does not appear affirmatively that either of the appraisers was chosen by the defendant,

or that he had an opportunity to choose one of them. The sheriff is not required by the statute to set forth all his proceedings in detail in his return, and there is no express provision making the title of the purchaser dependent upon the return of the sheriff. The settled doctrine as to sales under decrees or judgments is, that the purchaser is not concerned with anything but the judgment, levy and the sale. All other questions are between the parties to the judgment and the officer making the sale. Wheaton *v.* Sexton, 4 Wheaton 503. In Armstrong *v.* Jackson, 1 Blackford 210, the same doctrine is declared in the following language: "It is a fair presumption that the judgment of a competent court, which a *bona fide* purchaser sees of record, has been correctly rendered, and that the execution shown him in the hands of the sheriff has been regularly issued. It may be safely presumed, too, that the sheriff has done his duty, in obeying the directions of the statute, as it respects the inquest and the advertisement of sale, &c. It is important to the interest of both plaintiffs and defendants, that the title of a bona fide purchaser at sheriff's sale should not be affected on account of any irregularity in the judgment or execution."

Decisions of the courts of New England have been cited to show that any failure on the part of the sheriff to pursue the directions contained in the statute will render his proceedings void; and that the regularity of his proceedings must appear in his return. In those states the debtor's land is not sold. It is set off to the creditor after appraisal. The sheriff makes a return of his proceedings, including the appraisal, and this is to be recorded in the register's office within three months. It has been held under those statutes, that it must appear by the sheriff's return that the debtor had an opportunity to choose an appraiser. 2 Mass. 154; 8 id. 284: 17 id. 299; 12 Pickering 47; 3 N. H. Rep. 317; 6 id. 306. Those proceedings are similar to an extent upon an elegit in England. In the case of Jackson *v.* Sternbergh, 1 John. Cas. 153, the plaintiff in ejectment offered in evidence the judgment and execution. It did not appear by the return of the sheriff on the execution, that he had pursued the directions in the statute. The court say the return of the sheriff is not essential to the title of the purchaser. That title was not created by, nor is it dependent upon the return, but was derived from the previous sale made by the sheriff by virtue of the writ. It was sufficient for the purchaser that the sheriff had competent

authority, and sold and executed a deed to him. Proceedings upon an elegit do not apply to the writ of fieri facias. On an elegit no sale can be had, but the sheriff takes an inquisition by a jury, who set off a moiety by metes and bounds. It is necessary to return the inquisition, which, with the sheriff's return, constitutes the title. Here the sale and the sheriff's deed are sufficient evidence of the title; and if the purchaser can show that the sheriff has authority to sell, it is enough, and he need not look further.

Under the New England statutes, no deed is given. The doctrine of the common law applies here, unless the statute has changed it. Our statute is substantially the same as the Ohio statute. In the year 1828, this precise question came before a full bench of the supreme court of that state for the first time, in the case of Allen v. Parish, 3 Ohio R. 187. It was an action of ejectment. The defendant gave in evidence certain judicial proceedings, by virtue of which the land was sold by the sheriff. There was no appraisal of the land sold recited in the sheriff's deed, or proved at the trial, and the question was, whether the appraisement was essential to the validity of the deed. The court held, (Judge Burnett dissenting) that the sheriff's deed would vest in the purchaser, not being a party to the judgment, a good and valid title to the lands levied upon by and sold under the execution, although no appraisement of the premises had been made. They cite the case in 4 Wheaton 503; 2 Bibb 402; 3 id. 217; 8 John. R. 366; 16 id. 537; 2 Binn. 40; as asserting substantially the same doctrine. The court comment upon that part of the act which is our third section, and say that the proviso is in a section which is directory to the officer, and that if the appraisement was intended by the legislature as essential to the validity of the sheriff's deed, they would, it is presumed, have provided some mode of preserving the evidence of the appraisal for the benefit of the purchaser, and have incorporated the proviso into that part of the statute declaring the effect of the sale of land on execution, and the extent of the interest acquired by the purchaser at such sale. There is no direction in our act to the clerk to record the appraisal. In Ohio the original inquest is delivered into the hands of the sheriff, for his security. A copy of it is delivered to the clerk, not upon the return of the execution, but before the advertisement, that all may examine it and regulate their conduct accordingly. The court in Ohio

refer to the fact that the sheriff is liable to a penalty if he does not pursue the statute. Our Revised Statutes of 1838 contained the same provision in reference to advertising, and declared the sale good if the sale was not advertised, thus adopting the common law principle. But it is apprehended our statute does not reach proceedings under the act of 1841, except perhaps so far as relates to advertising. Under the Ohio statute, the defendant has an opportunity to get an order staying proceedings, if there is any irregularity in the sheriff's proceedings, before sale. One of the objections to the proceedings in the case cited, made by Judge Burnett, was the prohibition to sell for less than two thirds of the appraised value. He looked upon this as a condition precedent, a compliance with which was essential to vest the title in the purchaser. The majority of the court refer to a provision of the law equally express, requiring the officer, before he proceeds to sell, to advertise, and yet they say it was never held in their state that a failure to show that the property was advertised, would defeat a purchase at sheriff's sale.

The Ohio statute declares that the deed given " shall vest in the purchaser as good and perfect an estate in the premises therein mentioned, as was vested in the defendant at the time the lands became liable to the satisfaction of the judgment." Our statute goes further, and expressly declares what effect shall be given to the deed to the purchaser. It provides that the deed *shall be prima facie evidence of the correctness of the proceedings in such sale, and until the contrary be proved shall vest in the purchaser as good and perfect an estate to the described premises as was vested in the defendant in process.* This clause is contained in the same third section which contains all the directions relating to the appraisal and sale, and it manifestly shows the intention of the legislature to have been, that a compliance with the various provisions in that section should not be considered as a condition upon which the title was to vest, at least until the proceedings were shown to be bad. It shifts the burthen of proof, and requires the defendant to show affirmatively that the statute was not pursued.

The sheriff has returned, that he " caused the lands to be appraised according to law, by " &c. This should be received as evidence that the sheriff did comply with the first section of the act, if this is necessary. That the appraisers were *chosen* according to law, will be pre-

sumed until the contrary is shown. In the case of Piatt *v.* Piatt, 9 Ohio R. 37, the sheriff returned that he "had duly appraised, advertised," &c. On a contested motion to confirm the sale, this was deemed a sufficient return upon an execution, of an appraisement by three disinterested freeholders, in the absence of any proof to the contrary. The court say, it will be presumed the appraisal has been returned, because the law requires it of the officer, and in the absence of anything to the contrary, he will be presumed to have done his duty.

*Certified accordingly.*