### William · L. Worthington v. Catharine Hanna.

*Rights of mortgagee of chattels.* A mortgagee of chattels, whether in or out of possession, has the right to sue for any unlawful damage done to his security, and is not obliged to look to the personal responsibility of his debtor, or to show his insolvency, before prosecuting the wrong-doer.

A sheriff or execution purchaser can obtain no title against a mortgagee of chattels without paying the amount due or performing the conditions, and will be responsible for any unlawful interference. And the legal value of such a security to the mortgagee is the means it will furnish of obtaining satisfaction of the mortgage debt out of the property.

The mortgagee, whose property has been wrongfully disposed of, is not compelled to pursue the purchaser and recover the goods, but may sue the sheriff for the conversion.

*Sale of mortgaged chattels on execution.* The sheriff cannot take mortgaged property from the mortgagee without first paying or tendering payment or perform-

ance. He cannot sell in parcels without first discharging the lien, and such a sale will amount to an unlawful conversion. Without such redemption he can only sell the right to redeem the entire property, and this right is not divisible.

*Husband and wife: Wife's separate property: Presumption as to foreign laws: Law of the domicile governs.* Where a mortgage was given by a husband to his wife to secure a lawful debt against him, which she purchased in New York from the owner, and paid therefor her own money, derived from her father's estate, such a purchase being valid here, no presumption will be made that the law of New York, as at common law, would render the transaction void between them. No principle of law requires our courts to presume such a repugnancy between our laws and those of another state as to invalidate transactions allowed by our own laws.

If the parties were domiciled here our laws would govern in determining the validity of such a purchase and agreement.

*When appraisal under attachment levy evidence of value.* The sworn appraisement, made under a sheriff's levy on attachment, is admissible, but not conclusive, evidence of value of the property seized, to go to the jury in a suit against him for the conversion.

*Heard October 14. Decided October 24.*

Error to St. Joseph Circuit.

The facts are fully stated in the opinion.

*J. W. Flanders* and *John B. Shipman,* for plaintiff in error.

*William L. Stoughton,* for defendant in error.

CAMPBELL, CH. J.

Mrs. Hanna sued Worthington, for having, as sheriff, seized and sold certain chattels on process against Andrew Hanna, which had been mortgaged to her, and which were in the possession of the firm of McDougall, Nicholas & Abbott, under a security of the same date, which provided that they should take possession and sell goods to pay their own claim, and then turn over any surplus of goods or proceeds to her as such second mortgagee. The sheriff seized the property into his own possession under a writ of attachment, and sold it in parcels to different persons, without making any provision for either of the mortgages.

The first questions arise upon the pleadings. The first count of the declaration was in trover; but the parties

seem to have supposed that trover would not lie in such case, and no evidence was offered under it. That question, therefore, is not directly before us. The second count set out the rights of Mrs. Hanna under the second mortgage, which was recited at length, stated the mortgage of McDougall and others, according to its effect and their possession under it, and then averred a seizure, and conversion by sale to divers persons, whereby she was injured in her estate and deprived of her security on the goods, to her damage three thousand dollars, etc.

This declaration was not demurred to, and we do not perceive how the cause of grievance, if actionable at all, could have been set forth more clearly or specifically. But it is insisted the declaration should have shown the insolvency of the mortgagors, and averred that the mortgagee had no other security.

We do not think this objection well founded. It is based upon an idea that there is some substantial difference between the damage done to a mortgagee in possession and to a mortgagee out of possession, by the seizure and conversion of the goods. It is not questioned that a mortgagee in possession may sue in trover and recover for the conversion of property, whether he has other security or not, and whether or not his debtor is solvent. We see no possible foundation for holding that possession or present right of possession should make any difference in regard to the *quantum* of damages, within the extent of the security. The doctrine alleged would be equivalent to holding that no person could have a legal right to complain of being deprived of a security unless he could show the insolvency of his debtor,—or, in other words, that any wrong-doer could, at his pleasure, compel the holder of a security against a solvent party, to look only to the personal remedy and give up the security. This is too unrea-

sonable a doctrine to be entertained, and is entirely without support, unless it is assumed that the cases of *Manning v. Monaghan, 23 N. Y., 539,* and *Goulet v. Asseler, 22 N. Y., 225,* countenance it. We do not think it important to compare those cases with others, or to consider how far they go in favor of such a doctrine, as we think in a case like the present our own statutes furnish a positive rule. And we do not regard it as material to discuss the technical character of the securities, inasmuch as the statute is express upon that matter also.

The statute, authorizing a levy upon the interest of the general owner of personal property incumbered by security, is not confined to property mortgaged, but covers all "goods or chattels pledged by way of mortgage or otherwise, for the payment of money or the performance of any contract or agreement." And it allows the purchaser to "acquire" the mortgagor's interest, only on paying the amount due or performing the conditions. No one can be allowed to put himself in a better position by wrong-doing than by acting lawfully. The rights of mortgagees can only be divested by payment or tender of payment of their whole debt. Every security holder has a right to seek his money out of his security without proceeding against his debtor's personal responsibility. And the legal value of every security is the means it will furnish of obtaining satisfaction out of the property. It would be a singular doctrine to hold that an unsecured creditor can deprive a secured one of his security, and turn him over to his personal remedy, or make him assume the burden of proof that his debtor is insolvent. We think the count sufficient, and that all the testimony relating to the solvency or insolvency of the mortgagor was surplusage.

It was also claimed that the mortgagee could not sue

the sheriff for the conversion, but should seek out the pur-
chasers and recover the goods from them.

The statute does not permit the sheriff or the purchaser
to take mortgaged property away from a mortgagee in pos-
session and sell it in parcels. It only allows the sale to be
made "subject to the lien of the mortgage or pledge exist-
ing thereon;" and it is only upon payment or tender of
payment or performance, that the purchaser obtains any
rights whatever as against the mortgagee. There is no right,
therefore, to dispose of any article whatever by itself or in
advance of such payment. The right lawfully sold is merely
the right of redemption, and this is not apportionable.
When the sheriff departed from his statutory duty, and sold
in parcels, he became a trespasser, and the sale was an
unlawful conversion. The mortgagees were not bound to
follow the property, unless they chose.

It is also claimed that inasmuch as this mortgage was
given by a husband to secure a debt due to his wife, which
she purchased in New York from another holder, paying
therefor out of her personal estate, derived from her own
father, we have no right to assume that the common-law
rule giving a husband all his wife's personalty has been
abolished in that state, and must assume that the common-
law still prevails there, and that the mortgage is therefore
void.

While we cannot assume judicially to know what any
foreign law is, there is no principle which will justify
us in holding any thing void under foreign law which is
lawful here, until the variance is shown. To that extent
we may presume a conformity between our laws and for-
eign laws.—*Crane v. Hardy, 1 Mich., 56.* And, in order
to sustain the presumptive validity of foreign transactions,
we have, in the absence of proof to the contrary, held them

valid when conforming to the common law.—*High, Appellant, 2 Doug., 515; Ellis v. Maxson, 19 Mich. R., 186.* But we can make no presumption that a transaction valid under our laws is not valid elsewhere. The case does not show very clearly that at the date of the transfer of the note, the parties were not domiciled here. If so, then their rights would be governed by our laws,—so far as the title to personalty was concerned. But wherever they may have been living, the presumptions must be settled in her favor.

It is also alleged as error that the court refused to instruct the jury to disregard the appraisement made under the attachment proceedings, in estimating the value of the goods.

Plaintiff in error was allowed to introduce testimony on this subject, and the appraisal was left to the jury for what it was worth and not as in any way conclusive. We do not think there was any objection to this. It is a sworn valuation, made under the statute by persons selected by the plaintiff in error himself, as most likely to value the property judiciously. It is so far conclusive that the sheriff is compelled to release the property on a bond proportioned by its value. Testimony of value, being very much matter of opinion, has been received from many sources supposed to be reasonably reliable, upon less security against error than exists here. In *Smith v. Mitchell, 12 Mich. R., 180,* we allowed auction prices to be considered. In *Sisson v. C. & T. R. R. Co., 14 Mich. R., 489,* values were allowed to be shown by the published prices current. In *Cliquot's Champagne, 3 Wallace, 114, and Fennerstein's Champagne, 3 Wallace, 145,* a still more liberal rule was adopted. There may be serious objections to making any of these extraneous estimates conclusive. But when an appraisement is made in pursuance of a statute under oath, in the course of the proceedings, under which the party has himself acted, and

he himself selected the appraisers, we think it would be going too far to say that such a valuation is entirely worthless as evidence against him. Assuming that he acted fairly in selecting them,—and this is a reasonable presumption,— it must be supposed that the safeguards provided by the statute with an express reference to securing this evidence, will give it at least a claim to consideration against the officer who obtained it. See also *Comstock v. Smith, 20 Mich., 338; Kermott v. Ayer, 11 Mich., 181.*

These considerations dispose of all the errors alleged which have been brought to our attention. We think there is nothing in the record which affects the correctness of the judgment, which is affirmed with costs.

GRAVES and COOLEY, J. J., concurred.

CHRISTIANCY, J., did not sit in this case.