SAM SCALING v. FIRST NATIONAL BANK OF WICHITA FALLS.

Decided April 22, 1905.

1.—Chattel Mortgage—Foreclosure—Partnership Equities.

Where cattle that were mortgaged belonged to the mortgagor individually, the mortgagee can not be postponed in the collection of his debt by foreclosure to an adjustment of equities existing between the mortgagor and a partner of his in the business of buying and selling cattle.

2.—Same—Description of Cattle.

Cattle covered by a chattel mortgage were sufficiently described as: "One hundred two-year-old steers branded either D on left hip or A on right side. Twenty-five head of yearling steers branded either D on left hip or A on right side, and being all the cattle in said brands, being the same cattle bought

by me from J C. Hoge, the said cattle being held in the L. M. pasture, about eighteen miles south of Dundee, Texas."

### 3.—Same—Variance—Pleading—Renewal Mortgage.

Where the proof of the chattel mortgage showed such description of the cattle, there was no variance because of their description in the petition for foreclosure as "one hundred and twenty–five head of steers, some branded D on left hip, some branded A on right side," nor by reason of the fact that in a renewal mortgage the cattle, mentioned therein as being the same formerly mortgaged, were described as "branded D on left hip and A on right side."

### 4.—Same—Location of Brand.

That the cattle converted by defendant were not the same covered by plaintiff's mortgage was not made to appear by reason of the fact that the cattle sold to and used by defendant were described in the testimony as con–sisting of "one hundred and twenty–five head of cattle, nearly all of which were steers branded D on left hip and A on right side," with further statement by the same witness that some of the cattle were branded D on left hip, and some of them A on right side.

### 5.—Same—Recording—Clerical Omissions.

The rights of a mortgagee under a chattel mortgage filed for record with the County Clerk are not affected by the failure of the clerk in any respect to discharge his duty with reference thereto.

### 6.—Same—Conversion in Another State—Record Notice.

Where plaintiff's chattel mortgage was duly filed in the proper county in this State to fix the lien upon cattle, defendant was not relieved of liability for their conversion by reason of the fact that he received and sold them in another State, since he was charged with constructive notice of the lien.

### 7.—Same—Conversion—Right of Mortgagee.

A mortgagee may maintain an action against one who wrongfully converts the mortgaged chattels, whether or not plaintiff was at the time entitled to the possession of the property and whether or not the security remaining in his hands, if any, is exhausted or worthless or has been converted by some one else, and irrespective of the personal responsibility of his debtor.

### 8.—Same—Measure of Damages.

The compensation which a mortgagee is entitled to recover from a third party for a conversion of the mortgaged property is measured by the amount of the mortgage debt, if that be less than the value of the security so lost.

Appeal from the District Court of Wichita. Tried below before Hon. A. H. Carrigan.

*Montgomery & Hughes,* for appellant.—1. The plaintiff basing its right to sue for damages on the fact that it had a mortgage on the steers, the mortgagor being in possession, is not entitled to recover without proof that its security has been depreciated or reduced in value to an extent that it is insufficient to pay its debt. Mack v. Mittenthal, 36 S. W. Rep., 799.

2. Property bought by one partner in the line of partnership business will be held partnership property, unless it appears that it was the inten-tion of both partners that it should be the individual property of one of the partners. Kimberly v. Arms, 129 U. S., 512; 17 Am. & Eng. Ency. of Law, 1st ed., pp. 35, 36, 37, and authorities cited in notes.

3. The mortgage described the cattle as one hundred and twenty-five head of steers, branded either D on left hip or A on right side, there-

fore does not include cattle branded D on left hip and A on right side, and she cattle. Bank v. Western M. & I. Co., 26 S. W. Rep., 489.

4. The description of the cattle in said mortgage was insufficient to put appellant upon notice of plaintiff's rights, and appellant acquired said cattle and parted with a valuable consideration therefor without any notice of said mortgage or plaintiff's lien. Solinsky v. O'Conner, 54 S. W., 935; 6 Cyc., 1022 and cases cited in notes.

*Huff, Barwise & Huff,* for appellee.—1. A plaintiff having a mortgage on property is entitled to sue for damages for conversion upon showing that the defendant has taken the said property and appropriated it to his own use without payment of the mortgage debt. Boydston v. Morris, 10 S. W. Rep., 371; Focke v. Blum, 17 S. W. Rep., 772; 4 Waite's Actions and Defenses, 708; Cobb v. Barber, 47 S. W. Rep., 963; Fouts v. Ayres, 32 S. W. Rep., 435; McCown v. Kitchen, 52 S. W. Rep., 801.

2. The cattle mortgaged were sufficiently identified as the cattle converted. Ft. Worth National Bank v. Red River National Bank, 19 S. W. Rep., 517; Lopowski v. Taylor, 35 S. W. Rep., 934; Johnson v. Brown, 65 S. W. Rep., 486.

3. The description of the cattle in plaintiff's mortgage of November 28, 1902, was sufficient to notify the whole world of plaintiff's rights, and having been filed and noted on the records of Archer County, Texas, fixed a lien upon the cattle, and no actual notice to Samuel Scaling was necessary. Sayles' Rev. Stats., 3190 b secs. 1-8; Cleveland v. Empire Mills, 25 S. W. Rep., 1055; Ames Iron Works v. Chinn, 38 S. W. Rep., 247.

4. Appellee's mortgage being regular in form and filed and registered in Archer County, Texas, was notice of appellee's claims and appellant is liable for conversion even if part of cattle were received by him in Illinois and only part in Texas. Bank of Louisville v. Hill, 41 S. W. Rep., 350, and cases there cited; Bank of Commerce v. Morris, 21 S. W. Rep., 511, and cases cited.

SPEER, ASSOCIATE JUSTICE.—The First National Bank of Wichita Falls instituted this suit against L. M. Webb to recover the sum of $1,000, together with interest and attorney's fees, evidenced by a promissory note. It also sought to foreclose a chattel mortgage lien on "one hundred and twenty-five heads of steers, some branded D on left hip some branded A on right side," as against said Webb and Sam Scaling; alleging that said Scaling had assumed to pay the debt, and also converted said cattle. The petition sought also to foreclose a chattel mortgage lien upon a quantity of wheat against other parties defendant, as to whom the suit was subsequently dismissed. There was a judgment for the plaintiff, based upon the verdict of a jury finding against Webb according to the face of his note, and against Scaling for the conversion of the mortgaged cattle.

Scaling, the appellant, contends that the bank, basing its right to sue for damages on the fact that it had a mortgage on the steers, is not entitled to recover without proof that its security has been depreciated or reduced in value to an extent that it is insufficient to pay its debt.

When we examine the petition we find that, as suggested by appellant, a chattel mortgage upon 3,000 bushels of wheat, worth $2,000, was declared upon; but it was also alleged that Williams Bros. and the Wichita Mill & Elevator Company had taken possession of said wheat and converted the same to their own use, as to which defendants, as already stated, the bank dismissed its suit for conversion. It reasonably appears from the petition that this wheat and the cattle alleged to have been converted by appellant constituted the only security the appellee had for its debt. It would follow, of course, so far as the pleadings are concerned, that the act of appellant had not only depreciated appellee's security, but entirely dissipated all that remained. As to the testimony, we fail to find any evidence whatever that appellee held a mortgage upon any property other than the cattle.

There was ample testimony to authorize the finding that the cattle upon which defendant Webb executed the chattel mortgage in question belonged to him in his individual right, and, whatever may be the equities between Webb and Scaling as partners engaged in buying and selling cattle, certainly the appellee bank can not be postponed in the collection of its debt to the adjustment of these equities. It may be that in an accounting between the partners Scaling and Webb, this property, if it were purchased with partnership funds by the managing partner, a court of equity would treat as partnership property as between them. This is the extent of the holding of the case of Kimberly v. Arms, 129 U. S., 512, 10 Sup. Ct., 1064, 34 L. Ed., 557, so much relied on by appellant.

We also find that the original and the renewal mortgages executed by Webb upon the cattle in question were not void, but sufficiently described the property, and were duly filed with the county clerk of Archer County, Texas—the county in which the mortgaged property was situated—and that there was no variance between the allegations of the petition and such mortgages. The original mortgage described the cattle as being "one hundred two-year old steers branded either D on left hip or A on right side. Twenty-five head of yearling steers branded either D on left hip or A on right side and being all the cattle in said brands, being the same cattle bought by me from J. C. Hoge, of Throckmorton, Texas, the said cattle being sold in the L. M. pasture about 18 miles south of Dundee, Texas." The renewal mortgage described the property as "one hundred head of three years old steers branded D on left hip and A on right side, also twenty-five head of two year old steers branded D on left hip and A on right side, the said cattle being located in L. M. pasture 15 miles south of Dundee, Archer County, Texas, and being same cattle formerly mortgaged to said bank. This mortgage being given in renewal of the indebtedness." The allegations of the petition have already been set forth. The original chattel mortgage shows to have been "duly filed for record December 1, 1902, at 8:45 o'clock a. m., and duly registered same day in Book 6 of Archer County record of chattel mortgages, p. 163"; the statement of facts further reciting, "Both filing and registration of this mortgage being in legal form." The renewal mortgage appears to have been executed on May 25, 1903, and was filed for record in the office of the county clerk May 27, 1903, "and properly entered in record of

Archer County chattel mortgages May 27, 1903, in Book 6, p. 183, all regular and in legal form." Ft. Worth National Bank v. Red River National Bank, 84 Texas, 360, 19 S. W., 517; Lapowski v. Taylor, 13 Texas Civ. App., 624, 35 S. W., 934; Johnson v. Brown, 65 S. W., 485. We think the undisputed evidence shows that appellant received and converted the mortgaged property. The testimony of Webb that the cattle bought of Hoge, mortgaged to the bank, and sold to appellant, consisted of "one hundred and twenty-five head of cattle, nearly all of which were steers branded D on left hip and A on right side," in no way shows that the same were not the cattle covered by the mortgage sought to be foreclosed in this suit. This, in connection with other parts of the testimony of the same witness, shows clearly that some of the cattle were branded D on left hip, and some of them A on right side. So that we clearly could not sustain the third assignment—that the undisputed evidence shows that the plaintiff bank had no mortgage on any of the cattle that ever came into the possession of appellant. Construing Webb's testimony as we have, the evidence is undisputed that all the cattle included in the mortgage did come into his possession, and were converted by him. This also disposes of the fourth, fifth and sixth assignments.

What we have already said to the effect that the chattel mortgages in question were filed with the proper officer in Archer County also disposes of the seventh and eighth assignments of error. We find nothing to suggest that these mortgages were not filed for permanent deposit with the county clerk. If they were, the fact, if it should be a fact, that that officer failed in any respect to discharge his duty, would in no wise affect the appellee's rights in the premises. Cleveland v. Empire Mills, 6 Texas Civ. App., 479, 25 S. W. Rep., 1055; Ames Iron Works v. Chinn, 15 Texas Civ. App., 28, 38 S. W. Rep., 247. Nor is appellant relieved from liability by reason of having received and sold the cattle, or a part of them, in the State of Illinois. He is yet charged with constructive notice of appellee's lien, and is liable for the value of the cattle in an action for conversion. Bank of Louisville v. Hill, 41 S. W. Rep., 349; National Bank of Commerce v. Morris, 21 S. W. Rep., 511, 19 L. R. A., 463, 35 Am. St. Rep., 754; and authorities cited in these cases.

If the court erred in admitting the testimony of Webb to the effect that appellant assumed and promised to pay his debt to the appellee, the same was harmless, inasmuch as the jury found in favor of appellant upon this issue; and we see no objection to the court's requiring the jury to indicate, as was done in this case, the paragraph of the charge or the issue upon which they based their verdict.

Finding no error in the proceedings, we affirm the judgment of the District Court.

*Affirmed.*

### ON REHEARING.

The appellant insists in his motion for rehearing that we were in error in the original opinion in holding, in effect, that the dismissal as to the defendants charged with having converted the mortgaged wheat amounted to a withdrawal of the allegation that the appellee's debt

was secured by a chattel mortgage lien upon such wheat. We are now inclined to believe that his contention in this respect is correct, and that the appellee's petition, after such dismissal, should be held to show that its action was one for debt and foreclosure on both the wheat and the cattle, as against Webb, and for the value of the mortgaged cattle alleged to have been converted by appellant, as against him. But let it be so. This is a matter of no concern of appellant's, as we understand the law. It can not be true, as contended in this motion, that he would not be liable until the wheat security was exhausted or proved to be worthless or converted, as alleged. Under the rule in this State, a mortgagee may maintain an action against one who wrongfully converts the mortgaged property, or a part thereof; and this, too, whether at the time he is entitled to the possession of the same, or not. The action is an equitable one, but the mortgagee has shown his damages when he establishes that the defendant has deprived him of his right to a foreclosure and sale of the security for the satisfaction of his debt, and is entitled to recover compensation of such party, measured by the amount of his debt, if that be less than the value of the security lost. Boydston v. Morris, 71 Texas, 697, 10 S. W. Rep., 331; Zapp v. Johnson, 87 Texas, 641, 30 S. W. Rep., 861; Fouts v. Ayres, 11 Texas Civ. App., 338, 32 S. W. Rep., 435; McCown v. Kitchen, 52 S. W. Rep., 802; Focke v. Blum, 82 Texas, 436, 17 S. W. Rep., 770.

If appellant is correct in his contention that the pleadings and evidence should show that no sufficient security remains for the payment of appellee's debt, it would also follow that allegation and proof of the insolvency of the debtor would be required. We know of no case in this State or elsewhere that would support either of these contentions. It can not lie in the mouth of the wrongdoer who has dissipated a portion of the mortgaged chattels to insist upon the mortgagee's looking to other security or to the personal responsibility of his debtor. Where the mortgagee's debt is due, as here, he is entitled to his action to foreclose; and one who with notice has converted a portion of the property which he would be authorized to have sold in such action can not complain that he is required to respond in damages to the amount of the mortgagee's debt, where it is less than the value of such converted property.

In Worthington v. Hanna, 23 Mich., 532, where the precise question arose upon demurrer to the declaration which failed to allege the insolvency of the mortgagors, and that the mortgagee had no other security, the Supreme Court of that State say: "We do not think this objection well founded. It is based upon an idea that there is some substantial difference between the damage done to a mortgagee in possession and to a mortgagee out of possession by the seizure and conversion of the goods. It is not questioned that a mortgagee in possession may sue in trover, and recover for the conversion of the property, whether he has other security or not, and whether or not his debtor is solvent. We see no possible foundation for holding that possession or present right of possession should make any difference in regard to the quantum of damages, within the extent of the security. The doctrine alleged would be equivalent to holding that no person could have a legal right to complain of being deprived of a security unless he could show the insolvency of his debtor, or, in other words, that any wrong-

doer could, at his pleasure, compel the holder of a security against a solvent party to look only to the personal remedy and give up the security. This is too unreasonable a doctrine to be entertained." In the much later case of Huellmantel v. Vinton, 70 N. W. Rep., 412, this question was again before the same court, and the same conclusion reached in the following language: "The logical result of the defendant's last contention is that, in all cases of levy on a portion of the property covered by a chattel mortgage, the defendant in a suit brought by the mortgagee for conversion by levy and sale upon execution running against the mortgagor would be at liberty to defend on the ground that, while he levied upon and sold a part of the mortgaged property wrongfully, yet, as he had left sufficient to pay the plaintiff's debt, the plaintiff had suffered no injury. In a case like the present he might defend upon the ground that the defendant had ample security under another instrument (e. g., a real estate mortgage), although this defense, if allowed, might subject the plaintiff to the annoyance, expense, and delay of foreclosure of such mortgage, to say nothing of its violation of the rule that the creditor may choose between securities, and avail himself first of one or the other, at his option." In Jones on Chattel Mortgages, sec. 448, in discussing the rights of a mortgagee under such circumstances, it is said: "He is not obliged to look to the personal responsibility of his debtor, or to show his insolvency, before recovering of the wrongdoer. Neither is he required to first look to any other security he may hold." The Supreme Court of Alabama has said: "In such a case it is no answer to the complaint, as contended for here, that there was other property in the mortgage besides that converted by the defendant to which plaintiff might resort. His security being upon the entire property mortgaged, and the mortgage debt remaining unsatisfied, forbade any one, with knowledge of the incumbrance, to interfere with and dispose of any portion of it, without causing damage to the plaintiff, to the extent of such unlawful disposition." First National Bank v. Sproull, 16 South. Rep., 879. See, also, Case v. Campbell, 13 Pac., Rep., 324; Conwell v. Jeger, 51 N. E. Rep., 733.

Our holding in this respect in no wise conflicts with the decisions of this court in Mack, Stadler & Co. v. Mittenthal, 36 S. W. Rep., 790; Canfield v. Moore, 16 Texas Civ. App., 472, 41 S. W. Rep., 718; and Groos v. Bank, 72 S. W. Rep., 402. In the first case, to the petition in which a general demurrer was sustained, the plaintiff failed to show that he was damaged, in this: that the mortgage under which he claimed a lien was for the benefit of a number of creditors whose claims were required by its terms to be paid prior to that of the plaintiff and the petition failed to show that in any event the contingency would ever arise by which he would have a lien upon the property converted for the payment of his debt. It is not the case of a perfect lien, but merely a possible one. In the second case the mortgagors discharged their debt in full to the mortgagee prior to the institution of the suit by one of the mortgagors as assignee of the mortgagee against the defendant for a conversion of a portion of the mortgaged property. Of course, in such case, the debt being paid, the mortgagee had no interest in the property formerly covered by the mortgage, nor any cause of action whatever against one who had previously converted it, which he could enforce

himself or assign to another. The case last cited has little or no bearing upon the question, since it was an action by a plaintiff seeking to recover upon the ground of having been in possession at the time of conversion, and the question here under consideration was not there decided.

The motion for rehearing is in all respects overruled.

*Overruled.*

Writ of error refused.