## CALVIT v. AVERY STATE BANK.
### (No. 3190.)

(Court of Civil Appeals of Texas. Texarkana. March 11, 1926. Rehearing Granted April 1, 1926.)

1. **Chattel mortgages** ⚖️17—**One furnishing team, tools, and day hand for cultivation of cotton for half interest in crop held to have mortgageable interest therein after it was planted and practically matured.**

One furnishing team, tools, and day hand for cultivation of cotton for half interest in crop *held* to have mortgageable interest therein after it was planted and practically matured.

#### On Rehearing.

2. **Chattel mortgages** ⚖️48—**Description of mortgaged property as mortgagor's "interest in 80 acres of cotton," located "on the C. farm on R. river," in certain county, held sufficient.**

Description of mortgaged property as mortgagor's "interest in 80 acres of cotton," located "on the C. farm on R. river," in certain county, *held* sufficient, so as to charge third person with notice after mortgage was registered.

3. **Chattel mortgages** ⚖️47—**Location of mortgaged property need not be described with such certainty as to preclude extraneous inquiry.**

Location of mortgaged property need not be described with such certainty as to preclude extraneous inquiry; approximate certainty being sufficient.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by the Avery State Bank against J. H. Calvit. From the judgment, defendant appeals. Affirmed.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The Avery State Bank brought the suit against Mayo Johnson upon a promissory note in the sum of $575, together with interest and attorney's fees, and against J. H. Calvit for the alleged conversion of certain horses, mules, and cotton against which the bank had a valid and subsisting chattel mortgage lien. The defendant Johnson did not make answer, and consequently a judgment by default was entered against him. The defendant J. H. Calvit entered a general denial, and specially pleaded ownership of the horses and mules by purchase at the sale under a chattel mortgage covering such property, the said chattel mortgage being of prior date and superior to the chattel mortgage of the bank.

The case was tried before the court without a jury, and the court made findings of facts, as recited in the judgment, in substance as follows: (1) That J. H. Calvit was the owner of the horses and mules claimed by the bank to have been converted by him, and he acquired the title to the same through the foreclosure sale under a chattel mortgage which was prior and superior to any lien or right of the bank on such property; (2) that J. H. Calvit converted cotton, covered by a valid and subsisting chattel mortgage in favor of the bank, in the value of $378. In keeping with such findings of fact the court entered judgment against the defendant J. H. Calvit and in favor of the bank for $378. The defendant J. H. Calvit appeals, predicating error in awarding judgment against him as for conversion of the cotton. The value placed upon the cotton by the court is not contested.

It appears without dispute that on July 4, 1924, Mayo Johnson executed to the Avery State Bank a chattel mortgage on the following:

"The following described personal property now located and situated in the county of Bowie, state of Texas, to wit, my interest in 80 acres of cotton being grown on the Calvit farm on Red river during 1924. Also 25 acres of cotton on my own farm."

The controversy pertains to the cotton grown "on the Calvit farm." The mortgage was duly registered on July 10, 1924. J. H. Calvit, owner of the land, rented certain land on Red river for the year 1924 to Mayo Johnson to be planted in cotton. Mayo Johnson was to pay one-fourth of the cotton produced as rent. Mr. Calvit was to furnish such feed, provisions, and money as were needed to raise the crop, to be paid for when the cotton was sold. There were 20 bales of cotton raised on the land, and Mr. Calvit was due for supplies furnished $800. After paying all rents and advances for making the crop due to Mr. Calvit there remained the net amount of $756 from the sale of the 20 bales of cotton. That amount was in the possession of Mr. Calvit. On January 10, 1925, one half of the $756 was applied by Mr. Calvit as a credit on a note held by him against Mayo Johnson, and the other half was paid over to Iverson Johnson as his one-half of the amount. Mr. Calvit sold all the cotton at the instance and with the consent of Iverson Johnson. It further appears that in the early part of 1924 Iverson Johnson and his father entered into a partnership agreement to the effect that Mayo Johnson would furnish the teams and tools to cultivate the land rented from Mr. Calvit, and would provide the feed for the teams and a day hand to assist in the farming; that Iverson Johnson was to work the crop; that the cotton produced be equally divided after deducting the rent of the land and all the advances made by J. H. Calvit to Iverson Johnson. The agreement was carried out by both of the parties.

Iverson Johnson testified:

"I told Mr. Calvit about the trade between myself and my father about working the land, and it was agreeable to him. This was early in the spring."

Mr. Calvit testified:

"A few days after the last of the cotton was sold Mayo Johnson told me he had an interest in the cotton that Iverson Johnson made. When I made a settlement with Iverson Johnson about January 10, 1925, Mayo Johnson was there and claimed he was interested in the crop, but he would not say what interest he claimed. He did not claim any particular interest, and I could not get him to say. So I told him I would deduct the advances made to Iverson Johnson and divide the balance equally between he and Iverson Johnson, and that I would credit the note I held for myself and Gibbons against Mayo Johnson for all the balance except $93 which I paid to Iverson Johnson. I also took some corn and gave him credit on this note. The amount of the cotton money credited on this note, after paying the rent and all advances for making the crop, was $756. Mayo Johnson claimed one-half, or $378, of the amount."

Appellant did not know that the bank had a lien on the cotton.

O. B. Pirkey, of New Boston, for appellant.

Johnson & Waters, of New Boston, for appellee.

LEVY, J. (after stating the facts as above). [1] The first contention of appellant is that Mayo Johnson had no such interest in the cotton raised as was a subject-matter of mortgage. The agreement between Mayo Johnson and Iverson Johnson was, in effect, a partnership in the entire crop, in which for their mutual benefit the land was cultivated by Iverson Johnson, the teams and tools and a day hand being furnished for the purpose by Mayo Johnson, the net results to be equally divided in kind between them. It was not in the nature of a mere agreement to pay a debt out of a certain fund. At the time Mayo Johnson executed the chattel mortgage to the bank, July 4, 1924, the cotton had been planted and was practically matured. He had a present interest in the crop. Therefore Mayo

Johnson possessed some potential interest in the cotton mortgaged. It is sufficient that the mortgagor possesses some interest in the property mortgaged, although it be a limited or special interest, as where the mortgagor had an equitable interest or owns an undivided share, in the case the acquisition of such interest and the execution of the mortgage are concurrent. 11 C. J. p. 428.

The appellant insists that there is an insufficient designation of the property mortgaged and of the place where it may be found to legally impute notice to third parties. The appellant objected to the introduction of the chattel mortgage in evidence upon such ground. The description in the mortgage is indefinitely phrased as follows:

"My interest in 80 acres of cotton being grown on the Calvit farm on Red river during the year 1924."

It is manifest that the description would not, taken alone, be sufficient to lead to an identification of such property. That is the legal task of sufficiency of description upon which to found purely constructive notice to third parties. It does not point out any particular cotton as that to which the parties then contemplated a lien would attach, or point out any special tract or part of land on which it was to be produced. In order to the sufficiency of the mortgage upon which to found purely constructive notice, the place where the property may be found should be described sufficiently specific to enable a third person to go to the place indicated and set the property apart. It is not sufficient to say that it is in a county named, or "on the Calvit farm on Red river." Watson v. Paddleford & Son, 221 S. W. 569, 110 Tex. 525; McDavid v. Phillips, 94 S. W. 1131, 100 Tex. 73. In the instant case the appellant had no notice from any source, by inspection of the record or otherwise, that the bank had a lien on the cotton, and the bank in no wise relies upon notice to appellant of its lien other than such as the record of the instrument may import. Therefore, in the absence, as here, of either actual or constructive notice of the bank's lien, a liability against appellant as for conversion of the proceeds of the cotton cannot legally be predicated. In other respects there was error in the trial as to procedure or in the judgment rendered.

The judgment will be modified so as to deny a recovery to the bank against the appellant of the $378 as for conversion of the proceeds of the cotton, and, as so modified, the judgment will then be in all things affirmed. The costs of appeal and all costs incurred by appellant in the district court will be taxed against the bank.

On Rehearing.

[2] As determined in the original opinion, the location of the mortgaged property was in-sufficiently described, invalidating the mortgage as notice as to third persons, the property not otherwise being sufficiently identified. We now doubt the propriety of such construction of the mortgage, and grant the motion for rehearing. In reality, according to the face of the instrument, the property mortgaged was the mortgagor's "interest in 80 acres of cotton" located "on the Calvit farm on Red river" in "the county of Bowie, state of Texas." It is as certain of locality as "the L. M. pasture about 18 miles south of Dundee, Texas." Scaling v. Bank, 87 S. W. 715, 39 Tex. Civ. App. 154.

[3] The location of the mortgaged property is not required to be described with such particularity or so completely certain as to preclude the necessity of extraneous inquiry as to third persons; approximate certainty of description of locality suffices. If by giving the recorded mortgage the meaning it was intended to convey the third person is able to know the locality or situs of the property, it would be sufficient, as to the locality, to charge him with notice.

The judgment is affirmed.