HOLT & BAILEY V. CLARA HUNT.

Delivered February 19, 1898.

**1. Notice—Execution Purchaser Chargeable With.**

The levy of an execution on land does not create a lien superior to that of a prior purchaser of the land by an unrecorded deed, where the execution creditors, who were the purchasers thereunder, had notice of such deed prior to the levy.

**2. Evidence—Admissibility—Form of Objection.**

Evidence, part of which is legitimate, is properly admitted as a whole, as against an objection made to the entire evidence.

**3. Same—Parol Evidence—Officer's Return.**

Parol evidence is admissible in behalf of a stranger to the return of a sheriff to an execution, to show that a recital therein was a mistake.

APPEAL from Upshur. Tried below before Hon. J. G. RUSSELL.

*F. S. Eberhart*, for appellants.

No brief for appellee reached the Reporter.

RAINEY, ASSOCIATE JUSTICE.—This is an action for trespass to try title brought by appellants against appellee.

*Conclusions of fact.*—The conclusions of fact found by the trial court are supported by the evidence, and the same are adopted as the conclusions of this court. Said conclusions are as follows:

"1. On December 8, 1893, the firm of Holt & Bailey owned a judgment against James Hunt. On December 8, 1893, they issued an execution on this judgment and levied it on the land in controversy, and on the —— day of February, 1894, the said land was sold under this execution, and the plaintiffs became its purchasers at said sale, and the constable made, executed, and delivered to them a deed of conveyance therefor on the —— day of February, 1894, and this deed was duly registered on May 18, 1896.

"2. On October 2, 1893, the said James Hunt was justly indebted to the defendant in the sum of $40, and in payment of that debt he sold, and by deed of that date conveyed to the defendant the said land in satisfaction of that debt, and for the further sum of $35 in cash. The acknowledgment to this deed failed to state that the grantor was known to the officer taking the acknowledgment. The deed was recorded in the office of the clerk of the County Court of Upshur County, Texas, on December 9, 1893.

"3. Before the levy, under which plaintiffs purchased, was made, the plaintiff Holt was informed by one Joe Bates that the said James Hunt had sold the land in controversy to the defendant Clara Hunt, and at the execution sale public notice was given that Clara Hunt had purchased the land before the levy was made.

"4. The land in controversy was worth about $50, but in the trade

between Clara and James Hunt the agreed purchase price seems to have been about $75, and Clara Hunt paid to James Hunt the difference between the debt she held against him and the agreed price of the land in money. Plaintiffs bought the land at execution sale for $9.

"5. At the time Clara Hunt bought the said land from James Hunt she did not know that said James Hunt was indebted to plaintiffs; nor did she know that said James Hunt was indebted to others than those whose debts she paid as a part of the purchase price of said land.

"6. James Hunt was the common source of title to both plaintiffs. and defendant.

"7. At the time of the execution sale, and at the time of the levy, plaintiffs had notice that defendant had bought the land from James. Hunt."

*Conclusions of law.*—Clara Hunt being a bona fide purchaser of the land prior to the levy of appellants' execution thereon, and appellants having notice of said purchase prior to the levy of the execution, said levy did not create a lien superior to Clara Hunt's claim, though her deed was not recorded at the time of said levy.

The appellants objected to the introduction of the testimony of the witness Bates, which testimony was as follows: "A short while after the issuance of the execution in favor of Holt & Bailey against James Hunt, and under which the land here in controversy was sold, I was in Pittsburg, Camp County, Texas, and saw Mr. O. T. Holt, one of the plaintiffs in this case. I went there to see Holt & Bailey and to get them to release the levy on Jeff Dowell's land. The constable had levied the execution on Dowell's land. Mr. Holt asked me to give him a description of the tract in controversy which was set aside to James Hunt in the division of the Ephraim Hunt estate. I was one of the commissioners that had divided the estate, and had a plat and field notes to all of the subdivisions. I gave Mr. Holt the description of the James Hunt land at that time, and the levy on the same was made after that time.

"I do not remember the date when I saw Mr. Holt in Pittsburg, but it was several days after December 8, 1893, and after the execution in favor of Holt & Bailey against James Hunt, and introduced in evidence in this case, had been in the hands of T. J. Darby, constable, for several days at that time. I told Mr. Holt that James Hunt had sold the land here in controversy. I do not remember the date of such conversation with Mr. Holt, but I know it was some time after the issuance of the execution under which Holt & Bailey had the land sold."

It is insisted that this testimony varies and contradicts the sheriff's return on the execution under which the land in controversy was sold, and that the same was not admissible for any purpose.

The evidence was directed to the issue whether or not appellants had notice of Clara Hunt's claim to the land before the levy of the execution. If that part of the testimony which says that he told Holt about Clara.

Hunt's claim before the levy of the execution could be considered as varying and contradicting the return of the sheriff on the execution, there are other parts of the testimony that were legitimate evidence, and as the objection was made to the whole and not to a specific part thereof, the court did not err in admitting it. Railway v. Conneley, 43 S. W. Rep., 877. But we are of the opinion that if said evidence could be construed as contradicting or varying the sheriff's return, such would not preclude its admissibility.

It is well settled that a return of the proper officer on an execution is conclusive upon the parties to that proceeding. It can not be attacked by such parties in a collateral proceeding; but to vary or contradict it, a direct proceeding must be had for that purpose by a party to that proceeding. Schuder v. Ferguson, 77 Texas, 572; Flaniken v. Neal, 67 Texas, 631.

As to strangers to the proceeding in which it was issued, however, a different rule prevails. Not being parties to the original proceeding, they can not institute a direct proceeding to change the return of the officer. We are of opinion that the great weight of authority is to the effect that the return of an execution is not conclusive as to strangers. The rule on this subject is clearly expressed by Mr. Freeman in his excellent work on Executions, section 365, as follows: "A return may, in like manner, be conclusive against a stranger when it is offered in evidence in connection with an execution, for the purpose of showing what proceedings were taken to divest the title of the defendant. A return, as long as it remains in force, is confessedly conclusive on the parties to the suit. Its conclusive effect would be practically destroyed if strangers were permitted, as mere volunteers, to dispute that which the parties to the proceedings were estopped from denying. Hence, persons who had no interest in a return when it was made can not impeach it for the purpose of destroying its effect between the parties. But a return, when made, may state facts which, if proved, would produce a material effect upon the interests of a stranger to the writ. The question then arising is this: Can such return be received as evidence for or against such stranger? and if so, what effect must be given to it? The answers to these questions, given by the different authorities, are very uniform, and are to the effect that a return, as to the facts which the officer was required to state in it, is prima facie but not conclusive evidence for or against a stranger to the suit. The reason why the return of an officer is not conclusive on strangers, where their rights are sought to be prejudiced by it, is because, in case it is false, they have no remedy by action against the officer, nor have they any right to control, amend, or vacate the return. The purchaser under an execution is not bound by the return, nor dependent on it for title." This principle, we think, is recognized in this State.

In the case of King v. Russell, 40 Texas, 132, the litigation was between the purchaser under execution and a stranger to the writ—a grantee of the defendant in the writ before any lien had attached. Parol

testimony was permitted to show that the recital in the sheriff's return was a mistake.

In Holmes v. Buckner, 67 Texas, 107, the purchaser of land under execution was permitted to vary the sheriff's return. The court quoted, with approval, the following from Freeman on Executions, section 341, viz: "He has no control over the officer, and therefore is not prejudiced by a deficient or incorrect return; nor by the entire absence of any return whatever." See also in this connection, Schuder v. Ferguson, supra.

The judgment is affirmed.

*Affirmed.*