HOPPING et al. v. HICKS. (No. 1081.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 20, 1916. Rehearing Denied Jan. 10, 1917.)

1. EXECUTION ⊂⊃344—RETURN—COLLATERAL ATTACK.

In a suit by the surety on a secured note, as assignee of the note after payment, seeking payment from the maker and to establish a lien on the chattels mortgaged, the plaintiff, not being a party to the judgment under which the execution was levied upon the mortgaged property, may attack the return on the execution and show that there was in fact no levy or sale thereunder.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1033–1040; Dec. Dig. ⊂⊃344.]

2. CHATTEL MORTGAGES ⊂⊃157(2)—EXECUTION LEVY—EVIDENCE—SUFFICIENCY.

Evidence *held* sufficient to show a levy of execution thereon before mortgage was recorded under a judgment against the mortgagor.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. ⊂⊃157(2).]

3. EXECUTION ⊂⊃146(2)—LEVY—RETENTION OF POSSESSION BY OFFICER.

The mere fact that a sheriff left live stock in a lot over night after making levy of execution on it, until arrangements could be made to care for it, did not release the levy or make the levy lawfully theretofore made, no levy.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 384; Dec. Dig. ⊂⊃146(2).]

4. EXECUTION ⊂⊃245—SALE—EVIDENCE—SUFFICIENCY.

In a suit by the surety on a secured note, as assignee of the note after payment, seeking payment from the maker and to establish a lien on the chattels mortgaged, evidence *held* sufficient to warrant a finding that neither the mortgagor nor the plaintiff waived the statutory requirement that property taken under execution must be present and exhibited at the place of sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 681–686; Dec. Dig. ⊂⊃245.]

**5. EXECUTION ⬤⟿220—PRESENCE OF PROPERTY —STATUTES.**

Under Rev. St. 1911, art. 3760, providing that personal property taken on execution shall be sold on the premises where taken or at the courthouse door or at some other place where it is more convenient to exhibit it to the purchaser, and article 3762, providing that personal property shall not be sold unless present and subject to the view of those attending the sale when it is susceptible of being exhibited, the presence of the property at the sale is only excused when its nature prevents it from being exhibited, and the nature of the premises or the remoteness thereof does not excuse compliance with the statute.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 622–625; Dec. Dig. ⬤⟿220.]

**6. EXECUTION ⬤⟿288—SHERIFFS AND CONSTABLES ⬤⟿120—SALE—LIABILITY UNDER A VOID SALE.**

Where a sale of chattels taken on execution was void because of failure to comply with the statutes requiring the presence of property at the sale, the sheriff and purchaser at the sale, having wrongfully taken possession of the property over the protest of the owner, were guilty of conversion and liable to parties sustaining damages thereby.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 823–826; Dec. Dig. ⬤⟿288; Sheriffs and Constables, Cent. Dig. §§ 205–218; Dec. Dig. ⬤⟿120.]

**7. CHATTEL MORTGAGES ⬤⟿170(2)—RIGHTS OF MORTGAGEE—CONVERSION OF PROPERTY BY EXECUTION CREDITOR.**

The purchaser of chattels under void execution sale and the officer conducting the sale, being wrongdoers, are not in a position to demand that the assignee of mortgagee of the property taken look to other property of the mortgagor or to the mortgagor's personal responsibility.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 305; Dec. Dig. ⬤⟿170(2).]

**8. SUBROGATION ⬤⟿7(7)—RIGHT OF SURETY.**

Where the surety on a note secured by chattel mortgage paid the note, he was subrogated to the rights of a mortgagee under the mortgage and the debt.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 26, 77, 92; Dec. Dig. ⬤⟿7(7).]

Appeal from District Court, Parmer County; D. B. Hill, Judge.

Action by W. E. Hicks against R. C. Hopping and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Patton & Bratton, of Clovis, N. M., J. D. Reese, of Farwell, and Kimbrough, Underwood & Jackson, of Amarillo, for appellants. Russell & Dameron, of Hereford, for appellee.

HUFF, C. J. The appellee, W. E. Hicks, sued V. C. Weir, R. C. Hopping, and D. W. Dunn, alleging substantially that Weir was indebted to the First State Bank & Trust Company of Hereford, Tex., in the sum of $1,-580, and to secure this amount he executed a chattel mortgage to that bank on certain described stock, cattle, sheep, etc., and thereafter paid all of the indebtedness except the sum of $300, which he borrowed from the Western Bank of Hereford, Tex.; that W. E. Hicks signed this note to the bank as surety on the 10th day of January, 1914, and also to secure the Western National Bank of Hereford, Weir executed a chattel mortgage to that bank, on certain described property, possibly some of it described in the former mortgage; that thereafter, at the maturity of the notes, Hicks discharged the same and took an assignment of the note; and that afterwards Hopping and Dunn took charge of the mortgage property last mentioned, and converted it to their own use. He sues to recover of Weir the sum of money, together with interest and attorney's fees on the note, and to establish a lien against the property and for the value of the property so converted by Hopping and Dunn.

Hopping and Dunn answered by alleging that one C. S. Fergus obtained judgment against V. C. Weir for the sum of $130, upon which judgment an execution was issued, and placed in the hands of Hopping, who was the sheriff of Parmer county, and levied on the property in controversy as the property of Weir, and after advertising the same sold it at public sale, and that Dunn became the purchaser thereof, paying $152.55, which is credited on the judgment, after paying the costs; and also attempted to require the marshaling of assets in the case by setting up the fact that there was $417 worth of property not included in the last mortgage and levied on by the execution but covered by the first mortgage, asking that the court require that that property be first sold by Hicks under the first mortgage.

The trial court submitted only one issue to the jury, and that was for the jury to find the value of the property sold and purchased by Dunn. This the jury did, finding its value to be $235. The trial court rendered judgment against Weir in favor of Hicks for the amount of the debt, $300 together with interest and attorney's fees; established the mortgage against the property described therein and a judgment for $235 against Hopping and Dunn for conversion, finding that that amount was less than the indebtedness due Hicks.

The facts in this case are sufficient to establish the indebtedness of Weir, as alleged in the petition, and that Hicks paid the amount of the note to the Western National Bank of Hereford, and took a transfer of the note and the mortgage to himself, and that he was a surety on the note. The facts also show that this mortgage was executed on the 10th day of January, 1914, but was not recorded until the 12th. The facts show, also, that the execution on the judgment of Fergus against Weir was placed in the hands of the sheriff on the 10th of January, and that he and his deputy and one of the attorneys of Fergus went to Weir's place to levy on the cattle and purport to have levied the same about 8 o'clock on the 10th. The other facts necessary to an understanding of the ruling

of this court will be noticed in the body of the opinion.

The first assignment presents as error the action of the court in excluding the sheriff's return on the execution issued on the judgment rendered in the case of Fergus against V. C. Weir. The return, in so far as we are able to ascertain, is regular on its face. The objections to its admission were that appellant was not a party to the judgment; that it was not properly identified; that the sheriff made the levy personally and the deputy made the sale; and, further, unless it was shown that the levy was made it was not binding on any one.

The second assignment is to the action of the court in rendering judgment upon appellee's motion therefor for the reason that there was a valid judgment and execution and sale thereunder, at which Dunn became the purchaser of the property in question. It is manifest that the trial court sustained the last objection to the introduction of the officer's return on the execution, that is, there was no testimony showing a levy on the property, and that he rendered judgment against appellants, on the ground that because there was no levy on the property, and because the officer did not have it at the place of sale, the acts of the officer were a trespass and not protected by the writ, and that his failure to have the property present at the place of sale passed no title to Dunn, rendering the whole proceeding with reference to levy and sale void ab initio. The facts in this case raise the issue of the levy being made, which would be sufficient to satisfy the statute relating to such levies. The evidence shows that the sheriff, armed with the writ, accompanied by his deputy and Mr. Bratton, went onto the premises of Weir, the execution defendant; that he counted the sheep levied on and took the description of the other property. He testifies that all the property was in the lot of Weir except one horse, one mare, and possibly one colt, which were out in the pasture. He counted out the stock in the lot, 60 sheep, a horse, a mare, and did not recollect just how many colts. The parties present all assisted in the counting. Weir was not at home when the levy was made, and the sheriff told Mr. Lillard, a son-in-law of Weir, who was present and assisted in the counting, and then on the place, that he would leave the property there until the next day, when Clarke, the deputy, would come out and make arrangements with Mr. Weir to care for them. The next day Clarke, the deputy sheriff, did go and did see Weir, and entered into an agreement with him to care for the stock levied on at his place until after the sale. It is uncontroverted that the sale was advertised to be at the courthouse door of Parmer county, and that the sale was made by the sheriff's deputy at the courthouse door in Farwell, but that the stock or any of them were not present

at the sale; that they were sold for a lump sum, not being sold separately, Dunn being the bidder and purchaser at such sale. After the sale was so made, the sheriff's deputy and Dunn went to the place of Weir, and the deputy there delivered up the property to Dunn; and the evidence is sufficient to warrant the court in finding that Weir did not willingly surrender the property to the deputy or Mr. Dunn, and refused to receive pay for keeping them while awaiting the sale. After Dunn purchased the stock, he disposed of all of them. Some of them were dead, some in New Mexico, and the sheep, it may be inferred, are in the possession of one Mr. Maxwell, near Friona, possibly in Parmer county.

[1] It is contended by the appellant that the return on the execution cannot be attacked collaterally. The appellee Hicks was not a party to the judgment upon which the execution was issued, and may attack, we think, the return thereon, and show in fact there was no levy or sale thereunder. He had no control over the officer and should not be prejudiced by an incorrect or deficient return. This is recognized by our Supreme Court, in the case of Schneider v. Ferguson, 77 Tex. 572, 14 S. W. 154, and is expressly so held by the Court of Civil Appeals for the Fifth District in Holt v. Hunt, 18 Tex. Civ. App. 363, 44 S. W. 889.

[2] In this case, however, we think the evidence is sufficient to show a levy on the property in question. The stock were all in the lot of Weir, except two or three head, one of which Weir was using. A description of this stock was taken at the time, counted, and a note made thereof. It was levied on late one evening, and the next day arrangements were made with Weir to keep and care for the stock awaiting the sale. The evidence is practically undisputed that Weir consented that the stock should be left in his care; that he would act for the sheriff in their control. If we correctly understand our Supreme Court, this will constitute a levy.

"One object of the levy is to set apart from the effects of the execution debtor a sufficient amount of his property subject to forced sale to satisfy the judgment against him. Another is to secure the property against its disposition by the defendant in the writ during the interval between its seizure and its sale. Since a decree establishing a lien upon certain * * * property and an order directing its sale for the payment of the judgment designates the property to be sold, it is evident that a levy is not necessary for that purpose. In case of personal effects, it is proper for the protection of the plaintiff in the foreclosure decree that the officer should have power to seize and hold the property until a sale can be effected; and, in case the officer fail to exercise such power, and it should be removed before sale, he would doubtless be liable to the plaintiff for any loss which may result from his failure to make the seizure. But it is not perceived that any injury could accrue to the defendant from his being permitted to enjoy the possession of the property until the day of sale." Patton v. Collier, 90 Tex. 115, 37 S. W. 413.

[3] While the court in that case was passing upon a levy under an order of sale, it should be noted that the levy and sale thereunder is substantially the same as required under ordinary executions. In that case the officer notified Mrs. Collier that he had the order of sale and had advertised the property for sale and that she could keep it until sale day. He did not take possession of it by seizing it and taking it from her. The sheriff in this case designated the property levied on and left it with Weir to care for it for him, and Weir agreed to do so. This put the property under the control of the sheriff, and he became responsible for the acts of Weir in keeping and caring for the property. The property actually in the lot when levied on was such a seizure and possession as will constitute a levy. The mere fact that it was left in the lot over night, until arrangements could be made to care for, did not release the levy or make the levy lawfully theretofore made no levy. A sheriff should have a reasonable time in which to remove the property or to arrange for its care until sale. The views of this court on this question are expressed in the case of Burch v. Mounts, 185 S. W. 889. As to the levy on the horses in the pasture and the one which Weir was riding at the time of the seizure, we do not at this time care to express an opinion as to the levy. "The officer need not in any case take charge of the property in person. He may act through the agency of deputies or keeper, being in either event responsible for their conduct. If he chooses to repose confidence in the defendant, he may appoint him keeper and may leave the property in his custody." 2 Freeman on Executions (3d Ed.) § 261. On the question of levy appellee cites the case of Dickinson v. Mail Pub. Co., 31 S. W. 1083. In that case the sheriff declined to seize the property because the plaintiff would not indemnify him and at the sale stated he had refused to take possession of the property and in his return erased the words "taking into my possession.". This clearly was not a levy under the statute.

[4] The trial court, in our judgment, was not authorized to exclude the return of the officer; but as we view this record, in the light of other testimony, it becomes immaterial. That this property was not at the place of sale is established without controversy. The evidence is sufficient to warrant the finding that Weir or the appellee did not waive this requirement. Weir objected to the sale and delivery of the stock to Dunn and testified he did all he could, without resorting to force, to prevent Dunn and the deputy sheriff from removing the property after the purported sale.

[5] Article 3760, R. C. S.:

"Personal property taken in execution shall be sold on the premises where it is taken in execution, or at the courthouse door of the county, or at some other place if, owing to the nature of the property, it is more convenient to exhibit it to purchasers at such place."

Article 3762:.

"Personal property shall not be sold, unless the same be present and subject to the view of those attending the sale, when it is susceptible of being thus exhibited."

These statutes are clear and unambiguous that the property shall not be sold unless it is present at the sale. A sale made when it is not present is not sale under an execution and the statute. It is contended that the property was poor and weak and could not be moved to the courthouse. The statute provides for this contingency in giving preference to the premises where taken, but it is contended that the premises were remote and in a sparsely settled neighborhood. This does not authorize a sale at another place than those named, or dispense with the presence of the property. The statute will excuse its presence only when the nature of the property prevents its being exhibited. The nature of the premises or the remoteness thereof does not excuse. The statute amply protected the sheriff if he but followed its terms. In Dickinson v. Mail Pub. Co., supra, it is apparently held in order to render an execution sale valid it must be in the possession of the officer and exhibited at the sale. "A sale of personal property at a place where it cannot be examined and seen is a nullity." Freeman on Void Judicial Sales (3d Ed.) § 31; Kennedy v. Clayton, 29 Ark. 270.

It was held by the court of appeals, where a sale was made at a place different from the one in the notice of sale, that the sale was an improper one and the officer liable and responsible as a trespasser ab initio; that when he sold unlawfully he lost the protection of the execution, and this was true even though he paid over the proceeds received at the sale. 1 White & Wilson, § 399, citing Freeman on Execution, §§ 290 and 303.

[6] The Court of Criminal Appeals, in Floyd v. State, 68 S. W. 690, held the sale of an estray to be illegal when the animal was not present at the place of sale as required by the civil statutes for the sale of personal property under execution; that such sale will support a conviction for unlawful sale of an estray. However, in that case, the law with with reference to the sale of an estray was in other particulars violated. There being no sale, the sheriff had no right or authority to deliver the property to Dunn, especially over the protest of Weir. Having wrongfully taken possession of the property, they were guilty of conversion and liable to the parties sustaining damages thereby.

In examining the authorities, we find that there is some difference with reference to having the property present as to whether the sale would be simply void or voidable, some courts holding them void and others only voidable; but our statutes are so clear and apparently mandatory that we are satisfied that the rule in this state will require

the holding that a sale under such circumstances is void, unless perhaps the defendant waives their presence at the sale. This is not now before us. It seems to be the rule in this state, where a trespasser converts property to his own use, that a mortgagee may sue for and recover its value if it does not exceed his debt.

There being no controversy, or at least such under the assignments and requested instruction that we can take note of, raised by the evidence as to the amount of indebtedness, and the judgment having established the debt and mortgage, we believe the court submitted the only issue raised and properly rendered judgment for the value against the appellants. Fouts v. Ayres, 11 Tex. Civ. App. 338, 32 S. W. 435; Parlin v. Moore, 28 Tex. Civ. App. 243, 66 S. W. 798.

[7] It is contended that the appellee should be required to look to the other property covered by the first mortgage and not included in the second. The appellants in this case are shown to be wrongdoers, and they are not in a position to demand that appellee look to other properties or to personal responsibility. The judgment does not establish the first mortgage in favor of Hicks, and the evidence will support the finding that he was not subrogated to the right thereunder. Scaling v. First National Bank, 39 Tex. Civ. App. 154, 87 S. W. 715. However, it is admitted in this case that Weir was and is insolvent.

[8] The evidence warranted the finding by the court that Hicks was a surety to Weir on the note to the bank; that he paid this amount to the bank, taking a transfer of the note and mortgage at the time of the payment; and that he was thereby subrogated, both in law and by contract, to the rights of the bank under the mortgage and the debt.

We find no error on the part of the court in rendering judgment as he did in this case, and the judgment of the lower court will therefore be affirmed.