**ALEXANDER SCHROEDER LUMBER COMPANY, Appellant,**

v.

**MINERALES y METALES, S.A.I.C., Appellee.**

**MINERALES y METALES, S.A.I.C., Appellant,**

v.

**DeCON, INC., et al., Appellees.**

**No. 20843.**

United States Court of Appeals Fifth Circuit.

April 20, 1964.

Robert A. Hall, Houston, Tex. (Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel), for appellant and appellee Alexander Schroeder Lumber Co.

M. W. Parse, Jr., Houston, Tex. (Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel), for Minerales y Metales.

Before BROWN, MOORE * and GEWIN, Circuit Judges.

LEONARD P. MOORE, Circuit Judge:

This action was brought by Minerales y Metales, S.A.I.C. (Minerales) against Alexander Schroeder Lumber Company (Schroeder) and DeCon, Inc. (DeCon) for the conversion of 334 bundles of Argentine walnut lumber. The trial court, sitting without a jury, found Schroeder and DeCon jointly and severally liable to Minerales in the amount of $11,000, plus interest and costs. Schroeder's appeal challenges the lower court's determination of liability and its computation of dam-

ages; Minerales appeals on the damage issue alone. DeCon has not appealed.

George Barrington, R. D. Anderson and DeCon were engaged in importing Argentine walnut to Houston, Texas. In 1961 they entered into a contract with Schroeder for the delivery and sale in Houston of a shipment of 334 bundles of walnut lumber of varying grades and cost. Initially, Minerales had only agreed to handle Barrington's shipping arrangements, but subsequently purchased from him the bundles that were for Schroeder. Relying on Barrington's representations, Minerales sent to its bank for collection a draft drawn on Schroeder, an invoice addressed to Schroeder and a bill of lading showing that the bundles had been consigned to Minerales. When the five gondola cars carrying the lumber arrived at the railroad siding adjacent to Schroeder's lumber yard, Schroeder refused the shipment because of its dissatisfaction with the quality. Neither DeCon nor Schroeder accepted the draft.

On May 27, 1961, after the documents had arrived in Houston, but prior to the arrival of the lumber, DeCon had filed a petition in the District Court of Harris County, Texas, in which it claimed ownership of the lumber and named as defendants Anderson, Barrington, the Texas National Bank (which then held the documents) and the Railroad. Although DeCon knew of the outstanding draft, Minerales was not made a defendant. The same day, DeCon caused to be issued a writ of sequestration directing the sheriff to take the lumber into his possession. The sheriff did so as soon as the shipment arrived at Schroeder's siding. Pending determination of the Harris County action, DeCon executed a replevy bond and, thereafter, Schroeder, at DeCon's request, unloaded the shipment, broke open the bundles, and arranged to have 123 of them "re-manufactured." This last step was deemed necessary because, as Schroeder's vice-president said, a portion of the purportedly finished lumber amounted to "logs, just sawn logs."

---

* Of the Second Circuit, sitting by designation.

Minerales at no time requested Schroeder or DeCon to return the lumber. While Schroeder admitted receiving 334 bundles, only 45,000 of the 69,000 board feet originally shipped remained at the Schroeder lumber yard at the time of the trial.

The trial court found in brief that as a matter of law Minerales had title as a bona fide purchaser from Barrington as well as constructive possession as evidenced by the bill of lading. Schroeder's rights were no greater than those of DeCon, and having shown no justification, Schroeder's taking was a conversion. Finally, the trial court concluded that Schroeder and DeCon had not carried the burden of proving the whereabouts of the missing 20,000-odd board feet shown to have been shipped from South America and, consequently, included the missing portion in its damage award.

Schroeder launches its attack on the trial court's finding that it is liable for converting the lumber on two separate theories. It contends that it never asserted the ownership, dominion or control requisite to a conversion. In the alternative, Schroeder seeks to justify its actions on several grounds: that it was DeCon's bailee, merely acting as it was directed; that it was justified in relying on the writ of sequestration and replevy bond; and that under these circumstances Minerales was required to make a demand for the lumber as a prerequisite to bringing the suit. Schroeder does not challenge the trial court's conclusion that the lumber belonged to Minerales and that Minerales had the right to immediate possession

■ The argument that Schroeder did not assert the proscribed dominion and control over the lumber is as unimpressive here as it evidently was at trial. There was evidence that after initially refusing to accept the shipment, Schroeder unloaded it from the railroad cars, moved it to its premises and broke open the bundles. In addition, it arranged to transport 123 of the 334 bundles to a mill for re-manufacturing at its expense.

As altered, the lumber was returned to Schroeder's lumber yard where it remained for nearly two years until trial.

It would be difficult to conclude that such treatment of the property of another does not amount to a conversion as that concept is generally defined, namely, the wrongful exercise of dominion or control over property to the exclusion of the exercise of such rights by the owner. See, e. g., Ferrous Products Co. v. Gulf States Trading Co., 323 S.W.2d 292, 295 (Tex. Civ.App.1959), aff'd, 332 S.W.2d 310 (1960); Cantrell v. Broadnax, 306 S.W. 2d 429 (Tex.Civ.App.1957); Prosser, Torts § 15 at 71–73 (2d ed. 1955). The question remains whether Schroeder's actions were justified and whether Minerales was required to make a demand for the return of the lumber.

■■ In asserting that it acted only as DeCon's bailee, Schroeder seeks the protection generally accorded the bailee who wrongfully, although innocently, takes possession of goods from his bailor. See Restatement, Torts § 230 (1934). This principle, however, does not apply where the bailee exercises the degree of control shown here and goes so far as to cause a portion of the bailment to be transformed from "sawn logs" into lumber and does not apply where the purported bailee receives the goods intending to acquire the proprietary interest in them for itself. Restatement, Torts, § 229 and Comment *b*. The trial court could well have decided from the evidence that Schroeder looked upon and handled the lumber with a view to acquiring it for itself, and that it was hardly the innocent and disinterested bailee it claimed to be. Most apparent is the fact that Schroeder's usual business was that of buying and selling lumber, and was not that of a warehouseman or other commercial bailee. And, as to the transaction in question, its President testified that after refusing to take delivery under the original contract, Schroeder again negotiated with DeCon for the purchase of the lumber and, when it had been re-manufactured, agreed to pay DeCon $7,651.14.

Schroeder further attempts to justify its action by pointing to its reliance on DeCon's replevy bond. However, the sequestration proceedings in the state court had no validity as to Minerales, the owner, which was not made a party. See Vickery v. Crawford, 93 Tex. 373, 55 S.W. 560, 49 L.R.A. 773 (1900); Bassham v. Evans, 216 S.W. 446 (Tex. Civ.App.1919); cf. Hopping v. Hicks, 190 S.W. 1119 (Tex.Civ.App.1917) (writ refused). Schroeder, no matter how innocent, exercised dominion at its peril. See Fenley v. Ogletree, 277 S.W.2d 135 (Tex.Civ.App.1955) (writ refused); Kimbell Milling Co. v. Greene, 162 S.W. 2d 991 (Tex.Civ.App.1942), aff'd 141 Tex. 84, 170 S.W.2d 191 (1943). And, since Schroeder's handling of the lumber constituted an unjustified, wrongful conversion, demand and refusal were not a prerequisite to the suit. See Hicks Rubber Co., Distributors v. Stacy, 133 S.W.2d 249 (Tex.Civ.App.1939); Cotten v. Heimbecher, 48 S.W.2d 402 (Tex.Civ. App.1932).

Both parties challenge the trial court's award of damages. It appears that Minerales shipped from Argentina 334 bundles or, as otherwise stated in various documents, approximately 69,000 board feet. Deducting 5 per cent for remanufacturing the 334 bundles that arrived at the Schroeder siding should have contained about 66,000 board feet. However, only 45,000 board feet were at Schroeder's yard at the time of trial. The trial court held that the 20,000-odd missing feet were deemed converted by Schroeder and DeCon, and to compute damages it projected the average value of the 45,000 feet to the missing 20,000 feet. Schroeder contends that damages should be based on 45,000 feet. Minerales argues that the 69,000-foot figure was proper but that Schroeder should be deemed to have converted 20,000 feet of the best grade lumber and that the average price should not have been used to project the value of the lost portion.

We find the trial court's computation abundantly fair to both parties. Had it not been for the conversion, the difficulty in proof would never have arisen, and Schroeder had the burden of showing that less than 69,000 feet arrived. Cf. Allied Bldg. Credits, Inc. v. Grogan Builders Supply Co., 365 S.W.2d 692 (Tex.Civ.App.1963) (writ refused); South Chester Tube Co. v. Texhoma Oil & Ref. Co., 264 S.W. 108 (Tex.Civ. App. 1924). Minerales' assumption that Schroeder has converted 20,000 feet of the highest grade lumber finds no support in the record.

Conceptually as well as practically, a successful suit for conversion amounts to a forced sale. Therefore, the judgment of the district court must be amended to provide that upon payment of the money judgment, ownership of the lumber shall vest in Schroeder and De-Con as their interests shall appear. In all other respects, the judgment is affirmed.