### A. S. BLYTHE V. CRUMP BROS.

Decided February 15, 1902.

**1.—Chattel Mortgage Lien—Removal to Another State.**

Where mortgaged personalty is removed to another State with the consent of the mortgagee his lien will be subordinate to one acquired there without notice actual or constructive of the first.

**2.—Same—Lien Not Lost.**

But where such removal was without the knowledge or consent of the mortgagee, his lien was not lost by reason of his failure to give notice of it in the other State by record or otherwise where there was not sufficient time therefor before the sale of the property there to another.

**3.—Same—Priority of Liens—Subsequent Purchaser.**

Where, after the second mortgage, made in Texas to secure an advance of supplies, the mortgagor carried the property back to Arkansas and sold it to the first mortgagee in satisfaction of his debt, and he sold it to defendant, in an action to foreclose the Texas mortgage in which defendant intervened, claiming the property, the rights of the parties depended on the question of priority as between the two mortgage liens and upon how much of the consideration of the second mortgage was advanced before actual notice was had of the first.

**4.—Same—Description of Property.**

A description of the mortgaged property as "two gray mares" was sufficient, since it was thereby made capable of identification.

Appeal from the County Court of Bowie. Tried below before Hon. A. S. Watlington.

*Smelser & Mahaffey,* for appellant.

*H. W. Vaughan,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—On April 2, 1898, W. W. Shuptrine sold two mares to Sam Vandiver for $160. The sale was on credit, and Vandiver executed his note for the purchase price and secured same by a mortgage on the mares. The transaction took place in Miller County, Arkansas, where the mares were situated and where Shuptrine and Vandiver resided. The mortgage was duly registered in said State and county on January 16, 1899, but was never registered in Texas. In the latter part of February, 1899, Vandiver came to Bowie County, Texas, looking for work. He brought the mares with him, with the knowledge and consent of Shuptrine. He applied to Crump Bros. for a job, and on March 4, 1899, contracted with them to make and haul railroad ties, they agreeing to furnish him with supplies during the term of the contract. He gave a mortgage on said mares to secure the money to be advanced and the supplies to be furnished, and the mortgage was promptly registered in Bowie County, where the mares were and where the work was to be done. Crump Bros. had no notice, at that time, of Shuptrine's mortgage, but learned of the same soon afterwards. Under the said contract Crump Bros. advanced and furnished to Vandiver money and supplies to the amount of $358.29, of

which amount the sum of $161.54 was advanced after June 21, 1899. Vandiver paid on said account the sum of $140.36, on July 21, 1899, and $115 on September 4, 1899, leaving a balance of $102.91, which is still unpaid. Shuptrine's debt not having been paid, he brought suit thereon against Vandiver, in Bowie County, Texas, on June 21, 1899. He sought a foreclosure of his mortgage and caused a writ of sequestration to be issued and levied on the said mares. Vandiver replevied the mares, the sureties on the replevy bond being procured and indemnified by Crump Bros. The suit is still pending. About September 1, 1899, Vandiver delivered the mares to Shuptrine in consideration of $20 cash and a credit of $160 on the debt he was owing to Shuptrine. The mares were immediately taken by Shuptrine to Arkansas without the knowledge or consent of Crump Bros., and there sold to A. S. Blythe on September 9, 1899, in consideration of three notes, two for $50 each and one for $60, due respectively in thirty, sixty, and ninety days. The notes were negotiable and were transferred to a bank and have been paid to the bank by Blythe. At the time he bought the mares, Blythe did not know of the mortgage to Crump Bros., but the jury found he had knowledge of sufficient facts to put him upon inquiry as to the title to said property, which would have led to a discovery on his part of the said mortgage. On September 12, 1899, Crump Bros. brought suit in a justice court in Bowie County, Texas, against Vandiver on the balance owing by him to them. The suit was to foreclose the mortgage, and they caused the said mares to be seized under a writ of sequestration. On the next day Blythe filed his affidavit and claim bond, asserting title to the mares, which were thereupon turned over to him. Crump Bros. prosecuted their suit against Vandiver to judgment, a foreclosure of their mortgage being secured. They also recovered judgment in the Justice Court against Blythe in the claim case and he appealed to the County Court. A trial there resulted in another judgment for Crump Bros., and Blythe has appealed to this court.

The appellant insists that the finding of the jury that he had constructive notice of the Crump Bros'. mortgage was not warranted by the evidence. An examination of the statement of facts shows that the evidence upon this point is not very convincing. However, there is evidence tending to show that an ordinarily prudent man would have been excited to inquiry, and it is not improbable that such inquiry, when once begun, would have led to a knowledge of such facts as would have prevented a reasonably cautious person from purchasing the mares from Shuptrine. But even if Blythe bought without notice, it does not follow that he would be entitled to recover. The lien of Crump Bros. was valid and binding and followed the mortgaged property into Arkansas, the property having been removed to that State without their knowledge or consent. They were not at fault in failing to give notice of their mortgage, by registration or otherwise, to citizens of that State, as they did not have time to do so after the removal and before Blythe's purchase. Blythe having bought property incumbered with a valid lien,

and the lienholders not having been negligent in respect to giving notice, took title subject to the lien even though he may have been an innocent purchaser. The proposition is well settled by authority. Bank v. Morris (Mo.), 21 S. W. Rep., 512; Hernthall v. Burwell (N. C.), 26 Am. St. Rep., 556; Kanage v. Taylor (Ohio), 70 Am. Dec., 62, and note to case last cited.

On the principle stated, Shuptrine's lien on the mares was not lost when Vandiver brought them to Texas, and Vandiver held the same, after the removal to this State, subject to Shuptrine's lien. However, as Shuptrine consented to the removal, a purchaser or incumbrancer here for value and without notice of his lien would be entitled to be protected against it. When Crump Bros. took their mortgage they had no notice of Shuptrine's lien, and in so far as they were incumbrancers for value before they received such notice, their mortgage was superior to his. The case does not appear to have been tried on this issue as to the superiority of liens, and we are unable to satisfactorily determine from the record whether Crump Bros.' lien to secure the debt sued on was superior to Shuptrine's lien. The larger part of Vandiver's account with Crump Bros. appears to have been made after they had notice of the Shuptrine mortgage, and it is not clearly shown whether it was necessary for them to make such advancements under their contract with him and in order to secure that part of the account already created. Again, it will be remembered that Vandiver had made certain payments on his account with Crump Bros. and it is not shown how the payments were applied. If the advancements made by Crump Bros. after they had notice of Shuptrine's mortgage were not necessary to protect them against a breach of their contract with Vandiver or to save them against a loss of prior advancements, they could not be held incumbrancers for value, without notice, as to such advancements. And if the payments made were applied either by law or the parties to the extinguishment of that part of the account created before they knew of Shuptrine's mortgage, their lien for advancements made subsequent to notice could be held superior to his lien only in the event it was shown that they were compelled to make such advancements to protect themselves.

We think that the decision of this question, that is, which was the superior lien, is necessary to a proper disposition of this case. It appears that the mortgaged property was of value less than the debt owing by Vandiver to Shuptrine. By the sale to Shuptrine, Vandiver conveyer to him whatever rights he had in the mares. At the time of the sale he held the animals subject to both mortgages, but he was entitled to possession, and could dispose of the property to the first mortgagee in satisfaction of the debt secured by the mortgage, if the sale did not have the effect to defeat some superior right of the second mortgagee. If Shuptrine's mortgage was superior to that of Crump Bros. and his debt more than sufficient to consume the property, then he came lawfully in possession. Being legally in possession and holding a prior

lien for an amount greater than the value of the property, his right to the property was superior to any right held by the junior mortgagee.

Even if it should be held that the second mortgagee would have the right to pay off the first mortgage and then enforce his own, he could not disturb the first mortgagee lawfully in possession of property of value less than the debt secured until satisfaction of the first mortgage had been made or tendered. Crump Bros. have never offered to pay the debt due Shuptrine in any contingency. Therefore, unless they can show that the mares are worth more than Shuptrine's debt, or that his lien is inferior to theirs, the equity of the case is against them. Blythe, by his purchase from Shuptrine, acquired the title of his vendor, and could assert the same in any manner Shuptrine could have done, had he not sold the animals in controversy.

The appellees insist that the Shuptrine mortgage was void, because the property mortgaged was not described therein with sufficient certainty to identify the same from other like property. The property is described as two gray mares sold by Shuptrine to Vandiver. We think that the description given is sufficient, when aided by available parol proof, to identify the particular mares intended to be mortgaged. Crump Bros. appear to have had actual notice as to what mares were referred to, and were not, therefore, misled by the description.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*