## FARMER v. EVANS. (No. 1095.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1917. Dissenting Opinion and On Motion to Certify, Feb. 21, 1917.)

CHATTEL MORTGAGES &—82—NOTICE OF MORTGAGE RECORDED IN FOREIGN STATE—COMITY —STATUTE.

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 5655, requiring the registration of

chattel mortgages forthwith, and declaring the lien reserved in such instruments, on failure to register them, to be absolutely void as to creditors, subsequent purchasers, and mortgagees in good faith, where a chattel mortgage on mules was executed and registered in Oklahoma, and the mules were brought to Texas by the mortgagor, and he sold them to a purchaser for value in good faith, who had no actual notice of the existence of the mortgage, and such purchaser resold to another purchaser in good faith, the record of the mortgage in Oklahoma did not give the purchasers constructive notice of the mortgagee's right, and they were not liable to him, since the doctrine of comity giving a chattel mortgage effect in the state to which the property is subsequently removed should not be applied when to do so would conflict with the public policy of the state of the forum and injure or destroy the rights of local citizens innocently acquiring the property or some interest therein.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 151.]

Boyce, J., dissenting.

Appeal from Lipscomb County Court; W. H. Sewell, Judge.

Suit by J. L. Evans against Ben F. Farmer and F. F. Schick. From a judgment for plaintiff against defendant Farmer alone, the latter appeals. Reversed and rendered.

H. L. Adkins and E. C. Gray, both of Higgins, for appellant. Hoover & Dial, of Canadian, for appellee.

HALL, J. Appellee, Evans, instituted this suit in the county court of Lipscomb county, Tex., alleging in his amended original petition, in substance, that in October 1914, R. W. Warren executed and delivered to him a certain promissory note for the principal sum of $230, together with a chattel mortgage on six head of live stock, the mortgage having been executed in Harper county, Okl., where plaintiff and Warren lived, and where the mortgaged property was situated; that immediately thereafter plaintiff had said chattel mortgage registered in Harper county, as required by law, to give notice to subsequent purchasers; that subsequently Warren brought two black mules, being a part of the live stock covered by the mortgage, into Lipscomb county, Tex., and sold them to either Ben F. Farmer or one F. F. Schick, without the knowledge or consent of plaintiff, and that, with the exception of the $120 credited on the note, the same remains unpaid; that the value of the two mules exceeds the debt.

The defendants, Farmer and Schick, answered, alleging that they purchased the mules in good faith, without notice of the lien; that the chattel mortgage was never registered in Lipscomb county as required by law; that the description of the property as contained in the mortgage did not sufficiently identify and describe the mules purchased by defendant Farmer from Warren; that plaintiff had attempted to foreclose the mortgage on the other live stock under the Oklahoma statutes, but had failed to do so in compliance with said statutes; that under said foreclosure sale plaintiff had bought one of the animals at an inadequate price and sought to obtain credit for the difference upon the note sued upon.

Upon a trial before the court judgment was rendered for plaintiff against the defendant Farmer, but it was decreed that the plaintiff take nothing as against the defendant Schick. It appears from the record that Farmer purchased the mules from Warren, and afterwards sold them to Schick.

Farmer alone prosecutes this appeal, and first assigns as error the action of the court in not sustaining the general demurrer to plaintiff's petition. It is urged that plaintiff's pleadings are defective and subject to general demurrer, because they allege that Farmer purchased the mules from Warren at a time when such property was located in Lipscomb county, Tex., and when the mortgage lien given by Warren to plaintiff, and registered in Harper county, Okl., had not been duly filed in Lipscomb county, Tex., and did not allege that Farmer had any notice, either actual or constructive, of the existence of said lien. This is the principal question on this appeal.

It was held by this court in Best v. Farmers' & Merchants' Bank, 141 S. W. 334, that a lien acquired by registration of a chattel mortgage in a foreign state will not be given priority in Texas, since constructive notice imparted as a result of its registration depends wholly upon a foreign law which will not be enforced in the domestic forum. There is a conflict in the decisions of our own state upon this question. In the case of Blythe v. Crump, 28 Tex. Civ. App. 327, 66 S. W. 885, Templeton, J., held that under such conditions the mortgagee's lien follows personal property into another state to which the personalty is removed without his knowledge or consent, and that such mortgagee was not at fault in failing to give notice of his lien by registration or otherwise to the citizens of the other state into which the property was removed where sufficient time therefor did not elapse between the removal and a sale of the property to a person without notice.

To the same effect is the holding by Judge Speer in Scaling v. First National Bank, 39 Tex. Civ. App. 154, 87 S. W. 715. The only expression by the Supreme Court of this state with reference to the rule is by Hemphill, C. J., in Crosby v. Huston, 1 Tex. 203, 238. That was a case in which it appears the trial court held that the execution and registration of a deed of trust in Mississippi conveying personalty situated in that state was notice to all the world. While there was no proof of the existence of or the requirements of the registration laws of Mississippi, or that the instrument had been recorded in accordance with such law, if any existed, the court announced the broad doctrine that:

"Whatever may have been the effect of registration in Mississippi, it cannot be extended beyond the territorial limits of the state. The operation of such a municipal regulation is local, and cannot effect property in a foreign jurisdiction.'"

This holding of the Supreme Court was followed by this court in the case of Best v. F. & M. Bank, supra. The Crosby-Huston Case was not cited in either the Scaling Case or the Blythe Case, and, we presume, was overlooked since the opinions in those cases are based upon authorities from other states. From the notes to Walter C. Jones v. North Pacific Fish & Oil Co., 6 L. R. A. (N. S.) 940, and Snider v. Yates, 64 L. R. A. 353, we understand that the great weight of authority is against the rule announced by the Supreme Court in the Crosby Case, and by this court in the Best Case. It is not within the province of this court to overturn the decision by Judge Hemphill, as announced in the Crosby Case. Decisions of the Supreme Court may be overruled only by that court. Jones v. G., C. & S. F. Ry. Co., 23 S. W. 186; Missouri, etc., Railway Co. v. Blecher, 88 Tex. 549, 32 S. W. 518; Cleveland & Co. v. Carr, 90 Tex. 393, 38 S. W. 1123. By the principle of stare decisis we are constrained to follow the decisions of the Supreme Court until that court has changed its ruling.

There is another ground upon which we think Farmer and Schick should recover: By the weight of authority a chattel mortgage executed and filed for registration in one state, covering chattels situated there, is given effect in the state to which the property is subsequently removed solely upon the doctrine of comity; but this doctrine should not be applied when to do so would conflict with the public policy of the state of the forum, and when the effect of enforcing it is to injure or destroy the rights of local citizens innocently acquiring the property or some interest therein. The policy of our laws, evidenced by statutory provisions, require the registration of chattel mortgages "forthwith," and upon failure to so register them the lien reserved in such instruments is declared to be absolutely void as to creditors, subsequent purchasers, and mortgagees in good faith. Vernon's Sayles' Civil Statutes, art. 5655. In Austin v. Welch, 31 Tex. Civ. App. 526, 72 S. W. 881, it is held that a chattel mortgage executed on Saturday at 2 o'clock p. m., which was not filed by the mortgagee until the following Monday, although he passed the clerk's office Saturday afternoon before 5 o'clock, was not filed "forthwith" as required by statute. To hold that a chattel mortgage registered in a distant state should be given effect against bona fide purchasers of the property described against it in this state is diametrically opposed to the policy evinced by the above-mentioned statute and the decisions of this state construing it. In Pope v. Hanke, 155 Ill. 617, 40 N. E. 839, 28 L. R. A. 568, this doctrine is

declared by Magruder, J. That was an action upon three notes executed in St. Louis, given in settlement of a gambling contract for the sale of wheat and corn. The notes would have been valid under the laws of Missouri, because they were acquired by plaintiff before maturity, and without notice of their illegality. The court said:

"This being so, can a recovery be had in this state [Illinois] upon the notes here sued upon? The general rule is that the validity of a contract is to be governed by the law of the place where it is made (Phinney v. Baldwin, 16 Ill. 108, 61 Am. Dec. 62; Mumford v. Canty, 50 Ill. 370, 99 Am. Dec. 525); and in the application of this principle to notes it is held that the laws of the state where a note is made will govern as to the defenses, which can be set up against a recovery thereon [citing authorities]. While it is true, however, that one state or nation will recognize and execute the laws of another through comity, yet the principle of comity does not permit the enforcement of foreign laws which are prejudicial to the interests of the state where they are sought to be enforced. A contract made in one state will not be enforced in another, when to do so would contravene the criminal laws of the latter state, or would be against the express prohibition of its laws. Comity between different states does not require a law of one state to be executed in another when it would be against the public policy of the latter state. No state is bound to recognize or enforce contracts which are injurious to the welfare of its people, or which are in violation of its own laws. Mumford v. Canty, supra; Storey's Conflict of Laws, § 327; Faulkner v. Hyman, 142 Mass. 53 [6 N. E. 846]; Hill v. Spear, 50 N. H. 253, 9 Am. Rep. 205; Fisher v. Lord, 63 N. H. 514 [3 Atl. 927]."

The court then quotes from the Criminal Code and decisions of Illinois condemning such contracts, and proceeds:

"It thus appears that, under the statutes of this state and the decisions construing them, the notes sued on are absolutely void. The contracts upon which they are based are declared to be gambling contracts and void. The transactions in which they have their origin are prohibited by the criminal code of the state; and those engaging in them are subject to punishment by fine or imprisonment. * * * In view of the character of the transactions here involved as thus characterized, we think that our own law should be applied in determining whether a recovery should be had in this suit; and that comity does not require us to ignore the statute of Illinois under which these notes are void even in the hands of an innocent holder, in order to permit a defense which would be allowed under the law of a foreign state. The enforcement of such foreign law would contravene the Criminal Code of this state, and would be in opposition to its public policy, and to the express prohibition of its statutory enactments, and would be prejudicial to the interest of its people. We are therefore inclined to hold that no recovery can be had upon the notes," etc.

Upon investigation we find that other jurisdictions refuse to recognize the rule of comity adopted by a majority of the states and hold that their own citizens should be protected against prior liens acquired in other states by nonresidents. Miles v. Oden, 8 Mart. N. S. (La.) 214, 19 Am. Dec. 177; Verdier v. Leprete, 4 La. 41; Zollikoffer v. Briggs, 19 La. 521; Tillman v. Drake, 4 La. Ann. 16; Frelson v. Tiner, 6 La. Ann. 18; De-

lop v. Windsor, 26 La. Ann. 185. In the last-cited case the court said: .

"We are not bound by the comity of nations to enforce a contract which, if made here, could not defeat the rights acquired by attachment under our * * * laws."

This doctrine is announced after the court had stated that a chattel mortgage was unknown in Louisiana. In Miles v. Oden, supra, it was said:

"The court are aware of the common principle that contracts are governed by the laws of the country in which they are passed; and that, by the comity of nations, the rights flowing from them are not diminished by the parties passing into other states, provided, the laws of that state afford adequate remedies to enforce the obligation. But this principle is subject to the exception that in carrying them into effect no injury result to the inhabitants of the country whose aid is required to enforce them."

In the note to Farmers', etc., State Bank v. Sutherlin, Ann. Cas. 1914B, 1250, from which these authorities are cited, it is further stated that the courts of Michigan refused to enforce to the injury of a citizen of that state a chattel mortgage validly executed in a foreign state, and in Allison v. Teeters, 176 Mich. 216, 142 N. W. 340, said:

"A citizen of this state dealing with the property and its apparent owner in this state is not required to take notice of the records in Indiana."

To the same effect is State Bank of Sherman v. Carr, 15 Pa. Super. Ct. 346; Buffalo Coal Co. v. Rochester State Line Railway Co., 8 Wkly. Notes Cas. 126; Boydson v. Goodrich, 49 Mich. 65, 12 N. W. 913.

In Rosenbaum v. Dawes, 77 Ill. App. 295, the court said that the rule based on interstate comity that the constructive notice of a chattel mortgage resulting from its records in the state of its execution is also constructive notice to the citizens of other states to which the property may be removed should not be extended by the court of the latter state to the detriment of its citizens.

In view of the holding in Crosby v. Huston, supra, announcing the rule in this state, which we feel obliged to follow, and in addition thereto the doctrine as announced in the cases from which we have just quoted, we hold that the court erred in not sustaining the general demurrer.

The trial court found that in about one month after the mules in question were brought to Texas by Warren, the mortgagor, he sold them to defendant Farmer, who in good faith paid valuable consideration for them without actual notice of the existence of the mortgage and without other notice thereof than such as was afforded by the filing of said mortgage in Harper county, Okl., in accordance with the laws of that state; that in September, 1915, about six months after the mules were brought to Texas, Farmer sold them to defendant Schick, who in good faith paid valuable consideration for them without notice, either actual or constructive, other than such as results from the registration of the mortgage in Harper county, Okl. These findings are supported by the uncontroverted evidence.

Since the case seems to have been fully developed, and it is not probable that any new matter could be either set up or proven which would affect the result in another trial, for the reasons above stated we reverse the judgment of the trial court, and here render it that appellee, J. L. Evans, take nothing by reason of his action, and that the defendants, Farmer and Schick, recover of him all costs.

Reversed and rendered.

HUFF, C. J. (concurring). The members of this court concur that, under Crosby v. Huston, this case should be rendered for appellant. If the case cited is authority for the action of this court, it must, in my judgment, rest upon the theory that the policy of our law is to protect an innocent purchaser. The Supreme Court in that case evidently recognized the lex loci contractus as controlling in the construction of the contract, but refused to give extraterritorial effect to a foreign law as to notice to the hurt of a bona fide purchaser in this state.

The rule of caveat emptor, it occurs to me, in this country does not fully apply as to title.

"It seems universally to be conceded here, if the seller is in possession of the goods, the warranty of title accompanies the sale, upon the grounds that his undertaking to sell, under such circumstances, is of itself an affirmation of his title." Mechem on Sales, § 1302.

It is an implied warranty as to the whole title and protects against partial defects, liens, etc. Id. § 1304. Therefore the rule of "let the buyer beware" does not necessarily follow. If the seller is a fraudulent possessor and has no right to sell, the purchaser may get no title, not because he is required to be on his guard, but because the seller has no title to convey; but a mortgagor has title—the right of possession and the right to sell ordinarily. The purchaser, in the absence of a statute, as a rule, is not charged with notice of an equity.

"It is a well recognized doctrine in equity that a bona fide purchaser of the legal title to property, who pays a valuable consideration therefor, without notice, actual or constructive, of the right of other persons, is entitled to protection against others who may have equitable title to or interest in the thing purchased; and it matters not whether the thing purchased be real or personal property." Hill v. Moore, 62 Tex. 610.

It appears from Jones on Chattel Mortgages, in the section cited, that the duty is on the purchaser of property recently brought into one state from another, to inquire there whether the property is incumbered. It has never been the rule, as I understand, to require a purchaser in this state to inquire if there is an outstanding equity against the property. If he has no notice of it, he is not charged with knowledge. The fact that our statute does not require, as contended, the registration of chattel mortgages on property

brought to this state from another, does not necessarily establish that it is not the policy of this state to protect an innocent purchaser. We think it is manifest that the Supreme Court of this state, in the case cited, has determined the question that a purchaser is not required to go into another state to ascertain if there was a mortgage recorded therein. It is said in Crosby v. Huston:

"But, whatever may have been the effect of registration in Mississippi, it cannot be extended beyond the territorial limits of the state. The operation of such municipal regulation is local, and cannot affect property in a foreign jurisdiction."

But, as we understand by a great many decisions, it is held that under the rule of comity it will be so extended so as to effect notice. This would charge a purchaser with notice of an equity of which he was utterly ignorant. It appears to me the Supreme Court recognized that such a rule would defeat the policy of this state.

I concur in the result reached in this case.

BOYCE, J. (dissenting). On the original submission of this case I concurred in the result, under the impression that the case of Crosby v. Huston, 1 Tex. 203, 238, was controlling authority on us so long as it was not overruled or modified by the Supreme Court. A reconsideration of that case, however, has convinced me that it should not be so regarded. The question now squarely before this court was but meagerly and incidentally mentioned in a lengthy opinion in that case, devoted largely to other questions, and the court prefaces its discussion of the law as announced in the decision by this statement:

"Under these circumstances we will not undertake to determine the controversy and establish, not the real rights of the parties, but what they would have been had the whole transaction and the acts of all the parties transpired in this republic before the introduction of the common law."

The courts of sister states administering a common system of laws, under one national government, whose citizens are closely associated in social and commercial enterprises, would be disposed to apply the principles of comity more liberally in favor of contracts entered into in a sister state, and with a citizen of such state, than in favor of contracts executed in foreign nations and between its citizens. On account of this fact and the great change which has taken place since the decision of Judge Hemphill, announced in the case of Crosby v. Huston, I do not believe that our courts should now regard the passing expression of an opinion in that case, under the circumstances, as being controlling in a question of comity arising as it does in this case.

Ordinarily the purchaser of personal property, except commercial paper, acquires only such rights and title to the property as his vendor had. Certain exceptions to this rule were adopted by the law to prevent fraud;

among these the common-law rule that a chattel mortgage, when possession of the property remains with the mortgagor, was fraudulent as to creditors, etc. Most of the states, including our own, have adopted registration statutes, which take the place of the possession by the common law to render the mortgage valid. These statutes usually simply declare that chattel mortgages which shall not be accompanied by change of possession shall be void as to creditors and purchasers without notice, unless recorded in a prescribed manner. When the mortgage is so recorded, it then becomes effective against the world, in so far as the laws of the state under which it was recorded can make it so, in the same manner as if possession had been delivered to the mortgagee; and the overwhelming weight of authority is to the effect that, when one has complied with the law of the state where the property is situated and supposed to remain in such manner as to create a valid mortgage against purchasers and creditors, and the property is, without the mortgagee's consent, removed to another state, the courts of the state to which the property is removed will, under the doctrine of comity, recognize the validity of such mortgage as it existed under the laws of the state where the property is situated, and enforce it against even purchasers and creditors without notice. Blythe v. Crump, 28 Tex. Civ. App. 327, 66 S. W. 885; Scaling v. First Nat. Bank, 39 Tex. Civ. App. 154, 87 S. W. 715; Jones on Chattel Mortgages, § 260a; Cyc. vol. 6, p. 1089; notes to Snider v. Yates, 64 L. R. A. 357. This rule seems to me to be founded in good reason and justice and should be applied by our courts unless its enforcement is against the policy of our law.

Let us for a moment examine our statutes on the subject:

Article 5655 declares that:

Every chattel mortgage, etc., "which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making same, and as against subsequent purchasers and mortgagees, or lienholders in good faith, unless such instrument, or a true copy thereof shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this state, then, of the county of which he shall at that time be a resident."

Under this statute the mortgagee has the option of recording the mortgage either in the county of the residence of the mortgagor or of the county where the property is situated when the mortgage is given.

Article 6841 of Revised Statutes provides that:

Mortgage, etc., of personal property shall be recorded in the clerk's office of the county in which the property shall remain, "and if afterwards the person claiming title under such deed, mortgage, or other writing, shall permit any other person in whose possession such prop-

erty may be to remove with the same, or any part thereof, out of the county in which the same shall be recorded, and shall not, within four months after such removal, cause the same to be recorded in the county to which such property shall be removed, such deed, mortgage, or other writing, for so long as it shall not be recorded in such last mentioned county, and for so much of the property aforesaid as shall have been removed, shall be void as to all creditors and purchasers thereof for valuable consideration without notice."

We find no provision with reference to the recording of a mortgage here on property removed to this state from another state. Obviously the provisions of the articles above referred to were not intended to apply to such mortgages, and I do not think any policy with reference to the enforcement of a foreign mortgage here can be fairly deduced from these provisions of the statute. To my mind, they no more evidence an intention to protect innocent purchasers and creditors than an intention to protect the mortgage holder when he has complied with the law in the record of his mortgage. Indeed, it might more properly be said that these laws evidence a policy to protect the mortgage holder in his rights where property is removed without his knowledge and consent and relieve him of the duty of constant knowledge of the location of the mortgaged property, for it has been held that, where the property is removed from the county of its location, without the knowledge or consent of the mortgagor, he does not have to follow it up in its new location with the record of his mortgage in order to protect the mortgage against innocent purchasers. Spikes v. Brown, 49 S. W. 725; Thos. Goggan & Bros. v. Synnott, 134 S. W. 1184. Nearly all the states in which the question has been considered have registration statutes very similar to our own, and the courts of those states have deduced no such policy as announced by this court from such statutes.

Neither do I think it a wise policy, nor one that will in the end subserve the best interest of the citizens of this state, to deny the Oklahoma citizen the enforcement of his mortgage against property feloniously perhaps brought to this state because in the particular instance a citizen of this state will suffer. The Supreme Court of Iowa makes such an appropriate observation on this subject that I here quote it:

"The argument based upon the hardships of this and similar cases fails to convince us, that justice and the interest of the people of this state require a modification of the rule, lex loci contractus. * * * That there may be instances of innocent persons sustaining loss, as did the defendant in this case, in its application to instruments executed in another state, may readily be admitted; but these occasional instances of hardship are amply counterbalanced by the benefits which the people of the state receive in the application of the rule in other states to contracts entered into here. We could illy afford to establish a precedent disregarding and setting aside, in our administration of justice, those rules of comity which have heretofore been recognized by all civilized nations. It might return upon us with most mischievous results." Smith & Co. v. McLean, 24 Iowa, 329.

The application of this doctrine may work hardships in some instances, but equally hard is the result if one who has done everything required of him by law to secure his rights may be deprived of them by the criminal act of another, done without his knowledge or consent. The innocent purchaser of stolen property suffers equally when the property is taken from him by the rightful owner. If this property had been removed from the southern part of this state to Lipscomb county, a distance of nearly 1,000 miles, and had been bought by Farmer under the same circumstances, a mortgage recorded against the property located in a different part of the state before its removal would be enforced against it. Here the mortgaged property is removed just across the line of one state into another, and is sold within one month after its removal, and yet the mortgagee, without fault, is denied the enforcement of his mortgage, because taken in another state. I do not think that the courts of our state will go so far to protect its own citizens against the rights of a citizen of our sister state.

For these reasons, I respectfully dissent from the disposition of the case as made by the majority of the court.

### On Motion to Certify.

HALL, J. We are requested in the motion to certify to the Supreme Court the question of the extraterritorial effect of the Oklahoma mortgage. Our opinion in this case is based principally upon the Supreme Court's decision of Crosby v. Huston, 1 Tex. 203, and while it is in conflict with Blythe v. Crump, 28 Tex. Civ. App. 327, 66 S. W. 885, and Scaling v. First National Bank, 39 Tex. Civ. App. 154, 87 S. W. 715, I am of the opinion that it is not such a question as we are authorized to certify under the provisions of article 1623, Vernon's Sayles' Civil Statutes. That article provides that we shall certify the question to the Supreme Court whenever any one of the Courts of Civil Appeals may arrive at an opinion in any cause pending in said court that may be in conflict with an opinion theretofore rendered, or thereafter rendered by some other Court of Civil Appeals in the state on any question of law. While there is a conflict upon a question of law between our opinion in the instant case and in the Blythe-Crump and Scaling Cases, supra, this court having followed a Supreme Court decision, the status of the matter is that the conflict is between the Supreme Court and the last two cases decided by the Court of Civil Appeals, and it has been frequently held that, when this condition exists, it is not a question which should be certified under said article of the statute. Village Mills Co. v. Houston Oil Co., 186 S. W. 785–804 (34); Lock v. City National Bank, 165 S. W. 536; Smith v. Connor, 98 Tex. 434,

84 S. W. 815; Stark v. J. M. Guffey Petroleum Co., 80 S. W. 1080; Yoacham v. McCurdy, 27 Tex. Civ. App. 183, 65 S. W. 213.

I therefore respectfully dissent from the decision of the majority to certify.