WILLYS–OVERLAND CO. OF CALIFORNIA et al. v. CHAPMAN et al. (No. 878.)

(Court of Civil Appeals of Texas. El Paso. Nov. 7, 1918. On Rehearing, Dec. 12, 1918.)

1. SALES ☞451 — NECESSITY FOR REGISTRATION—WHAT LAW GOVERNS.

A conditional sale of an automobile in California, where it is not necessary to register the instrument, upon removal of the automobile to Texas by the purchaser, will be considered a chattel mortgage under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5654, 5655, and unless registered in Texas will be void as against bona fide purchaser.

2. REPLEVIN ☞103(2) — PLEADING—PRAYER FOR RELIEF.

In an action of replevin, where defendant's prayer for relief was that plaintiffs take nothing by their suit, a judgment that defendant have and recover of plaintiffs the property in question was not supported by the pleadings.

3. APPEAL AND ERROR ☞1073(1)—HARMLESS ERROR—JUDGMENT.

Where, in replevin suit, defendant's prayer was that plaintiff take nothing by his suit, the rendering of a judgment that defendant have and recover of plaintiff the property in question, although improper, was not reversible error.●

4. REPLEVIN ☞75—DAMAGES.

In replevin for possession of automobile, or for its value, and rent, plaintiff was not entitled to rent, where the judgment was for the value of the automobile, but was entitled to 6 per cent. on such sum from the date of taking.

On Rehearing.

5. SALES ☞456—CONDITIONAL SALES—LEASE —WHAT ARE "CHATTEL MORTGAGES."

An instrument in the form of a lease contract of an automobile is a "chattel mortgage,"

---

within Vernon's Sayles' Ann. Civ. St. 1914, arts. 5654, 5655. where a sale of the automobile was in contemplation and the lease contract was taken to secure payment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chattel Mortgages.]

6. WORDS AND PHRASES — "PUBLIC POLICY."
The "public policy" of a state is manifested by public acts, legislative and judicial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Policy.]

7. SALES ⬅⟜452—FULL FAITH AND CREDIT— CHATTEL MORTGAGE.
Vernon's Sayles' Ann. Civ. St. 1914, arts. 5654, 5655, making void, as to bona fide purchasers, instruments made to secure purchase price of personal property when not registered although executed in another state where they were not required to be registered, do not deny citizens of such other state any rights, in that they fail to give full faith and credit to the public acts of the other state.

8. COURTS ⬅⟜247(7)—CERTIFYING QUESTIONS —CONFLICTING DECISIONS.
In determining what constitutes a conflict in opinions of appellate courts such as would warrant a certification of the question, the cases must be of such a nature that one would operate to overrule the other in case they were both rendered in the same court.

Appeal from El Paso County Court, at Law; W. P. Brady, Judge.

Suit by the Willys-Overland Company of California and another against William Chapman and others. From a judgment favoring part of the defendants, plaintiff appeals. Affirmed.

McKenzie & Loomis and Chas. R. Loomis, all of El Paso, for appellant.

Turner & Jones and W. O. Hamilton, all of El Paso, for appellees.

WALTHALL, J. This suit was brought by appellants, Willys-Overland Company of California and Automobile Insurance Company, against William Chapman, Mrs. W. E. Chapman, and W. S. Wiley, to recover the title and possession of an automobile, or, in the alternative, for its value and rent. The following are substantially the facts in the case:

The Willys-Overland Company of California, a corporation, its place of business, San Francisco, owned the automobile in controversy. On the 3d day of July, 1916, said corporation, in the city of San Francisco, entered into a lease contract with Mrs. W. E. Chapman, then residing in San Francisco, the contract providing that the corporation leases to Mrs. Chapman, and Mrs. Chapman leases and hires from the corporation, the automobile; that Mrs. Chapman agrees to pay the corporation "for the rental hire and use" of the automobile the sum of $595 as follows: $200 cash, $40 on the 3d day of each following month for nine months, and $35 on the 3d day of the tenth month, with 6 per cent. interest then payable on the deferred rent payments. The lease terminated on the 3d day of May, 1917. Mrs. Chapman agreed not to dispose of the automobile, or take or allow it to be taken out of the state—the corporation retained the title. Mrs. Chapman by its terms took immediate possession, and was to retain possession so long as she complied with the terms of the contract. In the event Mrs. Chapman should fail to comply with the terms in any respect, the corporation, under the provision of the instrument, could take possession of the automobile, and all payments made to be applied as compensation for depreciation in value, for use and rental and as liquidated damages; Mrs. Chapman waiving all right to the money paid and the option to purchase. At the expiration of the lease term, the automobile should be returned to the corporation. In the event Mrs. Chapman had complied with the terms and conditions of the agreement, she should then have the right to purchase the automobile for the sum of $5, when the transfer and sale to her would take place. In the event of suit, Mrs. Chapman agreed to pay costs and attorney's fees. The lease contract contained other features not necessary to state. Before suit filed, the Willys-Overland Company of California made an assignment of the lease agreement to the Automobile Insurance Company. About September 3, 1917, Mrs. Chapman and her husband, William Chapman, without the knowledge or consent of appellants or either of them, and with intent to convert the automobile to their own use, removed said automobile from San Francisco, Cal., to El Paso, Tex., and failed to further comply with the terms of the lease agreement, and in February, 1917, and without the knowledge or consent of appellants or either of them, sold and delivered at El Paso, Tex., said automobile to the Cadillac Sales Company. The Cadillac Sales Company thereafter sold and delivered said automobile to W. S. Wiley. Appellants used due diligence to locate and recover said automobile. The lease contract was not recorded nor required to be recorded in California, nor was it recorded in Texas. Neither the Cadillac Sales Company nor Wiley had actual or constructive notice of the lease contract, and as to each of them the sales were for value received. Under the laws of the state of California, a married woman may contract the same as if she were a feme sole. The laws of California do not require the registration for any purpose of contracts for conditional sales of personal property, and said contract is good and enforceable in California under the laws of that state. On locating the automobile in this state, appellants used due diligence in making demand for its possession, and, on refusal to deliver same, appellants employed an attorney and sequestrated the automobile. W. S. Wiley retained possession by giving replevin bond

with A. E. Ryan and Robert Homan as sureties. No rent for the use of the automobile, other than the $240 as agreed in the lease contract, has ever been paid to appellants or either of them. The value of the rent for the use of the automobile is $5 per day if rented by the day, or $25 per week if rented by the week.

The facts pleaded by appellants and appellees were along the lines stated above, appellants praying for the title and possession of the automobile and, in the alternative, for its value, and for its rental value from date of conversion to date of judgment, and for costs including attorney's fees. In addition to general demurrer, special exceptions, and general denial, appellee Wiley pleaded that he was a bona fide purchaser for value without notice; that the lease contract was a chattel mortgage and was not recorded in El Paso county, Tex.; and prayed that appellants take nothing by their suit. The trial before the court without a jury resulted in a judgment denying appellants the relief prayed for as against William Chapman and W. T. Wiley and the sureties on Wiley's replevin bond; judgment for appellants against Mrs. Chapman for $500 with interest, and attorney's fees; judgment in favor of William Chapman against appellants for the title and possession of the automobile and in favor of Wiley and sureties on the replevin bond for title and possession of the automobile, and in favor of William Chapman, Wiley, and sureties, against surety on appellant's sequestration bond for all costs.

## Opinion.

[1] Appellants under four assignments of error, and several propositions under each, complain of the judgment rendered. We think we need not discuss in detail all of the questions presented. Were appellants, under the facts stated, entitled to judgment for the title and possession of the automobile as against Wiley? The contention of appellee Wiley is that, having purchased the automobile in El Paso county, Tex., from the Cadillac Sales Company, for value and without notice, actual or constructive (having no actual notice and the instrument under which appellants claim never having been recorded in El Paso county, Tex., or elsewhere in Texas), appellants should not recover against him; that while in California the lease contract is a conditional sale, and the laws of that state do not require its registration to give it effect as to innocent purchasers for value without notice; in Texas it is a chattel mortgage, and the statutes of this state and the decisions of the courts declaratory of the public policy of this state fix the status of such contracts and make them void as to third persons unless recorded; and that the Texas rule requiring registration applies alike to all such instruments, though execut-

ed and to be performed in California and effective there, to have effect here must be recorded here, for the reason that the instrument executed and to be performed in California has no extraterritorial effect. A great many cases, and some of the text-books we have examined, sustain appellant's contention, especially the case of Adams v. Fellers, a South Carolina case, reported in (88 S. C. 212, 70 S. E. 722) 35 L. R. A. (N. S.) 385, and the cases in the supplementary note reporting that case. We need not review that case nor the cases referred to in the note, as we think the Texas courts have adopted the opposite rule, holding that under circumstances, similar to those of this case, a purchaser for value without notice, of property brought into this state, obtained a good title. Our Supreme Court, in Crosby v. Huston, 1 Tex. 235, held that the rule that the nature, validity, obligation, and interpretation of contracts should be determined by the lex loci contractus, is not to be extended to the defeat, over our laws, of rights which occurred under them after the property was found within their jurisdiction. The principle of the rule as above stated, we think, is clearly announced in Crosby v. Huston, supra, and applied in the following cases: Sanger v. Jesse French Piano & Organ Co., 21 Tex. Civ. App. 523, 52 S. W. 621; Best v. Farmers' & Merchants' Bank, 141 S. W. 334; Farmer v. Evans, 192 S. W. 342—under facts very similar to this case. Under facts somewhat dissimilar to this case, the same principle is announced in Weider v. Maddox, 66 Tex. 377, 1 S. W. 168, 59 Am. Rep. 617, and Fowler v. Bell, 90 Tex. 150, 37 S. W. 1058, 39 L. R. A. 254, 59 Am. St. Rep. 788. While it is true that as a general rule a contract valid where made is valid everywhere and will be enforced everywhere, there is an exception to the rule as firmly fixed as the rule itself, to the effect that comity is not permitted to operate within a state to the prejudice of its government, in opposition to its settled policy or the interests of its citizens. The Legislature made no exception in favor of foreign conditional contracts or chattel mortgages executed and effective in other states, where the property embraced in such instrument is subsequently brought into this state and here sold, in enacting articles 5654 and 5655, Vernon's Sayles' Civil Statutes.

[2, 3] By the third assignment, appellants complain of the judgment awarding title and possession of the automobile to appellees on the ground that appellees' pleading and prayer for relief is not sufficient to justify such judgment. Under the statute, the prayer for relief is an essential part of the petition. Burks v. Burks, 141 S. W. 337. The relief prayed for by appellee Wiley, other than in his cross-action, was that appellants take nothing by their suit. This was the proper prayer, and the judgment should have been that appellants take nothing by their suit.

The judgment rendered is that Wiley and his sureties on the replevin bond, naming them, do. have and recover of and from appellants and its sureties the automobile in question. The judgment rendered, while not in proper form, is to the same effect as the judgment that should have been entered. We think the error is not reversible. As said by the court in McKee v. West, 55 Tex. Civ. App. 460, 118 S. W. 1135, in a trespass to try title case, under a plea of not guilty, and where the appropriate judgment for defendant is that plaintiff take nothing by this suit, a further adjudication of title and right of possession would comprehend no more than that involved in an adjudication that plaintiff take nothing. See, also, French v. Olive, 67 Tex. 403, 3 S. W. 568. The assignment is overruled. The judgment will be reformed so as to read that appellants take nothing by their suit. To that extent only the assignment is sustained.

[4] By the fourth assignment, appellants complain of the judgment rendered in their favor against Mrs. Chapman. It is claimed that plaintiffs' measure of damages for rent of the automobile should have been the market rental value, instead of 6 per cent. interest on the value of the automobile, as allowed by the court. Plaintiffs prayed for judgment against her for the market value of the automobile and rental value from September 3, 1916, to date of judgment, December 4, 1917. The court rendered judgment against Mrs. Chapman for $500, the value of the automobile, and six per cent. interest on said $500 from October 1, 1916, to the date of the judgment. Had plaintiffs recovered the automobile from Mrs. Chapman, the measure of their damages for rent would have been the market value during the time of its detention. But having recovered of Mrs. Chapman the value of the automobile rather than the automobile, the measure of the damages would be the 6 per cent. interest on the value recovered to the date of the judgment. The assignment is overruled.

Under the above-cited authorities of our courts, we hold that the court was not in error in rendering judgment in favor of appellee.

Judgment affirmed.

## On Rehearing.

[5, 6] Appellants, in their motion for a rehearing, strongly urge that this court is in error in affirming the judgment of the trial court, and submit three grounds of error. They also insist that we review Blythe v. Crump Bros., 28 Tex. Civ. App. 327, 66 S. W. 885, and Scaling v. First National Bank, 39 Tex. Civ. App. 154, 87 S. W. 716, used in their brief, but to which we made no reference in disposing of the case. In view of the fact that, as we are advised, another case is pending in this court involving the identical question disposed of in this case, we have con-cluded to more fully express our views upon some features of the case. It is insisted that, under the facts found and stated in the opinion, Mrs. Chapman had no title to the automobile and was unlawfully in possession of same, and that therefore Wiley acquired no title. The insistence is that Mrs. Chapman was the bailee of the automobile merely; that having failed to comply with the terms of the contract under which she was in possession, in several particulars, she forfeited whatever rights she had under the terms of the contract, and was in fact amenable to a criminal prosecution under article 1348, Vernon's Criminal Statutes, for having fraudulently converted the automobile to her own use, she having possession thereof under a contract of hiring. The terms of the contract under which Mrs. Chapman was put in possession of the property is set out in the opinion. It is referred to by appellants as a lease contract and is so designated by the contract itself. But while it is in form of bailment for hire, it provides for and had in view by its terms a sale of the automobile upon the conditions stated. Some confusion is found in the earlier reports in efforts to distinguish between the different forms of contract under which parties undertook to secure the unpaid balance of the purchase price where a sale of a chattel was in contemplation by taking some kind of security on the thing sold. In some instances, the instruments were held not to be within the registration laws, owing to the interpretations to be placed upon the contract, thus confusing the question of its registration to the injury of third persons, and thus favoring secret reservations of title, and conducive to fraud and collusion. Knittel v. Cushing, 57 Tex. 354, 44 Am. Rep. 598; Dunn v. Elser, 2 Willson, Civ. Cas. Ct. App. § 720, and cases there referred to. We need not go into a discussion of those cases, but refer to them solely for the purpose of enabling us to more fully appreciate and apply the purpose and need of the two registration articles of the statute as amended, referred to in the opinion.

The state's public policy is thus manifested in the two articles of the statute. Article 5654 declares that all reservations of the title to or property in chattels as security for the purchase money thereof shall be held to be chattel mortgages and, when possession is delivered to the vendee, is void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages, and the only exception made in the article is that it shall not be construed to contravene the landlord and tenant act. Registration is essential to give the instrument effect as to creditors and bona fide purchasers where possession is given by the owner to the purchaser. Brothers v. Mundell, 60 Tex. 246; Keller v. Smalley, 63 Tex. 519; Bowen et al. v. Lansing Wagon Works, 91 Tex. 385, 43 S. W. 872; Eason v.

De Long, 38 Tex. Civ. App. 531, 86 S. W. 347, and cases cited. It is insisted, however, that the registration of the instrument required by the above article has no application to the contract in this case for the reason that Mrs. Chapman, having no title could convey none. That, probably, is a correct statement of the law as formerly stated in some of the opinions. We think the confusion in some of the earlier decisions referred to above is removed by the enactment of the above article 5654. See Judge Willson's note at end of Dunn v. Elser, supra. Since the enactment of the above article of the statute, the uniform holding of our courts is that all reservations of title to property in chattels are chattel mortgages, and, when possession is delivered to the vendee, the reservation of title, unless registered, is void as to bona fide purchasers, such as we find Wiley to be. If such is not the effect of the statute, it has but little, if any, application. The contract certainly by its terms contains a reservation of title. It provides for a sale of the automobile; possession was delivered to the vendee; Wiley purchased without notice of the reservation, or any of the conditions in the contract. It is immaterial as to the form of the contract. The equity of Wiley in making the purchase is made by the statute a legal right and grows out of the fact that he has parted with a valuable consideration for the thing purchased without notice of the reserved title or other provisions in the instrument. Appellants insist, under this ground of error, that it is not contrary to the public policy of this state to award them the relief prayed for, and refer to the article of the Penal Code (supra) under which, it is claimed, Mrs. Chapman could be prosecuted for a crime in disposing of the automobile. If such be true, and we are not dealing with that branch of the case, it would follow that article 5654, supra, would have no application if Mrs. Chapman, by disposing of the automobile, would be guilty of the crime indicated in the article of the Penal Code referred to. But public policy has been designated by Mr. Justice Burroughs as "an unruly horse pursuing us, and, when you once get astride of it, you never know where it will carry you." We think, however, the public policy of the state as between appellants and Wiley is fixed by the articles of the Civil Code, supra. Public policy is manifested by public acts, legislative and judicial. Giant Powder Co. v. Ry. Co. (C. C.) 42 Fed. 470, 8 L. R. A. 700; Picket Pub. Co. v. Commissioners, 36 Mont. 188, 92 Pac. 524, 13 L. R. A. (N. S.) 1115, 122 Am. St. Rep. 352, 12 Ann. Cas. 986.

[7] The sustaining of the judgment of the court as to Wiley is not, in our judgment, denying to appellants any right they had under the law of the state of California, in that we fail to give full faith and credit to the public acts of that state, as claimed in appellants' second ground of error.

[8] We are requested to discuss Blythe v. Crump and Scaling v. Bank, supra. Whether the cases are in conflict or not in conflict, we think we need not discuss them. If in conflict, we do not follow them. The cases speak for themselves. Our opinion in this case would not in the least settle a conflict between our holding and the holding in those cases. But for the statement of the Seventh Court of Civil Appeals in Farmer v. Evans, 192 S. W. 343, and referred to in our opinion, we would not think Blythe v. Crump in conflict, under the facts of that case, as tested by the rule laid down by the Supreme Court in San Mutual Insurance Co. v. Roberts, 90 Tex. 78, 37 S. W. 311, in determining what constitutes a conflict. Under that rule, to be in conflict, the rule announced in the Blythe-Crump Case and the case at bar "must be based practically upon the same state of facts and announce antagonistic conclusions," or of such a nature that one would operate to overrule the other in case they were both rendered in the same court. In the first place, we note that the Blythe-Crump Case and Sanger v. Jesse French P. & O. Co., 21 Tex. Civ. App. 523, 52 S. W. 621, referred to in our opinion, were decided by the same court. Judge Templeton, in writing the opinion of the court in the Blythe-Crump Case, does not refer to their former opinion in the Sanger v. Jesse French P. & O. Co. Case. We must infer that the court did not consider the two opinions in conflict. In the Blythe-Crump Case, the main and controlling issue was the question of priorities of the two mortgages which was not determined by the judgment rendered, and which the court held necessary to a proper disposition of the case. In deciding the Blythe-Crump Case, the court did not refer to the Crosby v. Huston Case, nor to articles 5654 and 5655 of the statute, but while not referring to any decision of our own courts, following in part the rule laid down by some of our own courts prior to the enactment of the articles of our statute above referred to, but made no reference to any of them. It still is not clear to us that the court intended to announce a rule in that case different to that announced in the Sanger v. Jesse French P. & O. Co. Case, as it is stated:

"When Crump Bros. took their mortgage, they had no notice of Shuptrine's lien; and, in so far as they were incumbrancers for value before they received such notice, their mortgage was superior to his."

And the court says, the case not having been tried on the issue of superiority of liens, the court could not determine from the record whether Crump Bros.' lien was superior to Shuptrine's. However that may be, we are of the opinion that the statute of this state, in the articles referred to, control the issue as to the superiority of the respective titles as between appellants and Wiley. Much of what we have said applies to Scaling

v. First National Bank. We need not review the case at length, but refer to the case for the facts. The court nowhere undertakes to apply the articles of the statute referred to above to the facts of that case.

We are asked to certify the question considered upon the ground that our decision is in conflict with Blythe v. Crump and Scaling v. Bank, supra. We do not think there is such a conflict under the rule announced in Insurance Co. v. Roberts, supra, as to require this court to certify. After a very careful consideration, we believe the conclusion reached by this court is correct, and, in view of the congested condition of the docket of the Supreme Court, we are not disposed to further incumber that docket by certifying questions unless we are clearly of the opinion that we should do so. In this case, we think no such question is presented.

For the reasons indicated, the motions for rehearing and to certify are both overruled.